GALVESTON CITY SURF BATHING CO. v. S. HEIDENHEIMER ET AL.

(Case No. 2032.)

1. GRANT — DESCRIPTION.— When a grant is described as extending to the seashore, and bounded by it, the shore will not be considered as included in the grant. (Citing Storer v. Freeman, 6 Mass., 439; Niles v. Patch, 13 Gray, 257; and Littlefield v. Maxwell, 31 Me., 134.)

2. CITY CHARTER OF GALVESTON — GULF SHORE.— There is nothing in the city charter of Galveston indicating that the legislature intended to confer on that city any proprietary rights to the gulf shore, and no one has or can enjoy its exclusive use.

3. SAME.— Any citizen has a right to keep a bath house on the gulf shore line within the city of Galveston, provided it be so kept as not to constitute

---

a nuisance, or that it be so constructed and used as not to materially interfere with the rights of the public to the enjoyment of the waters and shores of the gulf. This right could not be impaired by extending the limits of the city to the open sea. The extension, in such an event, would be jurisdictional, and not proprietary.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

In July, 1881, the city council of Galveston gave its consent that John Bailey use and occupy exclusively the shore and surf of the gulf, between Tenth and Thirtieth streets, for the purpose of constructing thereon public bath houses, and to use the same for the period of ten years. The appellant sued, alleging that it was the assignee of John Bailey and succeeded to all his rights under the lease, which was fully set forth. The consideration of the lease was alleged to be the expense and the risk to be incurred by the lessees on account of the experimental nature of the enterprise, as it was uncertain whether buildings could be erected upon piling in the water and withstand the force of winds and waves; and also the greater pleasure and convenience of bathers, who had prior thereto been restricted to a less desirable use of bath houses upon the sands. The city reserved a control over the lessee and the subject of the lease by prescribing that the beach drive, which was a public highway, should in no way be obstructed. The mayor of the city executed an instrument which was in effect an attempt to lease the territory, viz.: The flats on the south side of the city, under water, between Tenth and Thirtieth streets, and the right to wharf out from the fast land. The plaintiff claimed as assignee of the lease the sole authority to build and operate bath houses as a convenience for bathers over the surf within the limits and for the period above named. It proceeded to sink piling in the sand below ordinary low water mark, and in 1881 constructed two large bath houses with the approaches leading from the shore, which were opened to the public in 1882, a small charge being made for their use.

In the spring of 1883 plaintiff followed up its work by the construction of another building and other improvements, without in any way interfering with the public highway of the beach.

Defendants, although informed of plaintiff's lease and right to the exclusive use and possession of said flats so far as building and operating bath houses within the bounds mentioned was concerned, and without the consent of plaintiff, or the permission of the city, or any other authority, proceeded to construct buildings within the

boundaries assigned to plaintiff, and within one hundred yards of plaintiff's improvements.

It was averred that defendants did not own or control the ground or flats upon which their building was placed, but that the same was in the control and jurisdiction of the city, except in so far as the right of temporary occupancy had been ceded to plaintiff.

The petition asked for an injunction to restrain defendants from proceeding with the construction of their building or wharf and from any further trespass upon plaintiff's rights. It showed that ample space could be found, within the corporate limits, either east of Tenth street or west of Thirtieth street, upon which coast, with proper authority, defendants might erect their piers and wharves.

Plaintiff alleged that great injury would be done it by depriving it of the emoluments which otherwise would have resulted to it as the fruits of its work; that many of defendants were insolvent, and that the damages likely to be sustained were difficult of estimation.

A supplemental petition was filed December 24, 1833, setting forth more specifically the trespass of defendants and the damages resulting therefrom to plaintiff.

The court sustained defendants' general and special demurrer to the petition and dismissed the suit.

*James B. Stubbs*, for appellant, cited: 1 Dill. Mun. Corp., secs. 106, 116; Yates v. Milwaukee, 10 Wall., 504; Hudson v. Cuero, L. & E. Co., 47 Tex., 56; Barney v. Keokuk, 94 U. S., 324; Galveston v. Menard, 23 Tex., 349; Thornton v. Grant, 10 R. I., 477; Atlee v. Packet Co., 21 Wall., 392–3.

*Wheeler & Rhodes*, for appellee, cited: Leonard v. Canton, 35 Miss., 189; Wallace v. San Jose, 29 Cal., 180; Minturn v. Larne, 23 How., 435; 15 Me., 237; Stover v. Freeman, 6 Mass., 439; Torchermacher v. Thompson, 18 Cal., 21; Martin v. O'Brien, 34 Miss., 21; City of Galveston v. Menard, 23 Tex., 349; Commonwealth v. Charleston, 1 Pick. (Mass.), 180; Certelyn v. Van Brandt, 2 Johns., 362; 31 Me., 134; Niles v. Patch, 13 Gray (Mass.), 257; Middleton v. Prichard, 3 Scam. (Ill.), 510; East Haven v. Hemingway, 7 Conn., 186; Canal Commissioners v. The People, 5 Wend., 423; Wheeler v. Spinola, 54 N. Y. (9 Sick.), 377.

WATTS, J. COM. APP.— This appeal involves the question as to the power of the council of the city of Galveston to grant exclusive

rights to the shore and lands covered by the waters of the Gulf of Mexico adjoining the city, and commonly known as the surf.

The limits of the city along the gulf front are defined by the charter as follows: "That the limits of said city shall embrace so much of Galveston Island from the point thereof on the east to Fifty-sixth street, or include the league and labor of land known as the Menard grant."

This grant to Menard, to which reference is made in the charter, bore date January 25, 1838, and was made in pursuance of an act of the congress of the republic of Texas, passed December 9, 1836. Paschal's Digest, art. 4248, etc.

The description contained in the grant to Menard is as follows: "Beginning at the northeast corner of lot No. ten (10), in section No. one (1), as represented in the plat of the survey of the Island of Galveston made by R. C. Trimble and William Lindsey, under direction of the secretary of the treasury, and running thence due north one hundred and fifty varas to a stake; thence eastwardly with the channel of the harbor in the bay of Galveston, and with the general course of said island, at the distance of at least one hundred and fifty varas from the shore, to a stake one hundred and fifty varas from the extreme eastern point of said island; thence south to the Gulf of Mexico; thence with the meanders of the gulf to the southeast corner of lot No. one (1), in said plat of survey; thence northwardly across the island with the eastern boundary of lots Nos. one, two, three, four, five, six, seven, eight, nine and ten, to the beginning."

The point made is that by the terms of the charter the city council has full power to manage and control, lease and grant, the use of the gulf shore and lands covered with the waters of the gulf commonly called the surf; and that in the exercise of that power the counsel had granted to appellant's vendor the exclusive right to erect and maintain bath houses upon that portion of the same lying between Tenth and Thirtieth streets. This assertion is predicated upon the assumption that the limits of the city include this shore and surf.

From the most ancient times, in all civilized countries, the free use of the waters and shores of the sea by the public has ever been recognized as an indisputable right.

It is immaterial whether the grant to Menard, as to its boundaries, be considered in the light of the civil or common law, so far as this appeal is concerned. By the civil law, the shore of the sea is the line of the highest tide in winter, while by the common law it is

the line of ordinary high tide. City of Galveston v. Menard, 23 Tex., 349; Gould on Waters, sec. 27, etc.; Angell on Tide Waters, 20–27.

Then, as most favorable to the appellant for the purposes of this appeal, the grant as to its boundaries on the gulf will be considered as a common law grant; by which all the land lying between the line of ordinary high tide and the line of the lowest tide is termed the shore and is owned by the state.

It is well settled that where a grant is described as extending to the sea-shore, and bounded by it, then the shore will not be considered as included in the grant. Storer v. Freeman, 6 Mass., 439; Niles v. Patch, 13 Gray, 257; Littlefield v. Maxwell, 31 Me., 134.

There is nothing in the charter of the city from which it can be assumed that the legislature intended to confer upon the city any proprietary rights to the gulf shore and surf.

Admitting that the city council may exercise jurisdiction over the shore and surf, for police and sanitary purposes, still it is very clear that the council could not itself assume exclusive proprietorship and use of these, nor could it authorize others to assume such proprietorship or use. The Menard grant stops with the shore; so as to the city limits, except as to police and sanity regulation. Here the gulf shore and surf belongs to the public. Every citizen has the same rights there as every other citizen, and none have the right to the exclusive use of this public property. Any citizen of the state has the right to erect a bath house in the surf, so that it is not made a nuisance, or so constructed or used as to materially interfere with the rights of the public to the enjoyment of the waters and the shores of the gulf.

However, if the limits of the city had been extended in that direction to the open sea, that would not have authorized the council to make the exclusive grant or lease insisted on by appellant. That extension would have been jurisdictional, and not proprietary. Angell on Tide Waters, p. 46; Gould on Waters, sec. 36, note 5.

In Commonwealth v. Roxbury, 9 Gray, 451, it is truly said: "An act of incorporation, therefore, without words of grant of the soil, would vest no part of the property of the government in such town."

There is nothing in the position that, as the charter confers upon the council control and power over the streets, alleys, public grounds and highways of the city, therefore the council has the same power and control over the gulf shore and surf. Admitting for the argument's sake, that these are included within the limits of the city, then the argument proves too much. From what source, it might

be appropriately asked, does the council derive any power to grant or lease the streets, ways and commons of the city? No such power exists. Waco Bridge Co. *v.* Waco, unreported.

In The City of Brenham *v.* Becker, W. & W. Cond. Rep., sec. 1244, it was said: "To place the people of the city, with respect to fresh meats and fish, at the mercy of Smith, or any other person, would be to allow a most dangerous monopoly notwithstanding the prohibition in the Bill of Rights."

This seems to have been an attempt to create a monopoly in bathing, not only as against the inhabitants of the city, but also against the public who might wish to participate in the use and enjoyment of this common property. It was appropriately said by the civilians: "And truly, by natural right, these be common to all; the air, running water, and the sea, and hence the shores of the sea. Nobody is therefore prohibited to come to the sea-shore."

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted March 25, 1885.]