### F. J. DE MERIT v. J. T. ROBISON, COMMISSIONER.

#### No. 1930.    Decided March 10, 1909.

**Public Mineral Lands—Submerged Coastal Flats—Sale.**

The law providing for the sale of all "public lands" containing valuable mineral deposits (Rev. Stats., art. 3498a, 3498j) did not entitle an applicant to purchase from the State, by compliance with its terms, a tract on the coast, part of a shallow bay (San Jacinto) covered by the flow of the tide but bare at ebb. The authority of the Land Commissioner did not extend to sale thereof. (Pp. 359–362.)

Original application to the Supreme Court for writ of mandamus requiring the Commissioner of the General Land Office to accept petitioner's application for the purchase of land.

*Lock McDaniel, D. W. Doom* and *D. H. Doom,* for relator.—The title to the soil of the land in controversy is vested in the State with the consequent right to dispose of the title to any part of the said soil in such manner as she may deem proper, subject only to the paramount right of navigation over the water so far as such navigation might be required by the necessities of commerce with foreign nations or among the several States, the regulation of which is vested in the general government. United States v. Mission Rock Company, 189 U. S., 391; Weber v. Harbor Commissioners, 85 U. S., 57; Shively v. Bowlby, 152 U. S., 1; Act of February 8, 1854, chap. 73, 4th Gammel's Laws, page 125; Baylor v. Tillebach, 20 Texas Civ. App., 490; Gas Company v. Ellert, 64 Fed., 421; Toledo Shooting Co. v. Erie Shooting Club, 90 Fed., 680; Saunders v. Railway Company, 144 N. Y., 75, 43 Am. St. Rep., 729; Lewis v. Portland, 25 Oregon, 133, 42 Am. St. Rep., 772; Jones v. Oemler, 35 S. E., 375; Hogg v. Boerman, 41 Ohio St., 81, 52 Am. Rep., 71; Bowlby v. Shively, 30 Pac., 154.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent.

The submerged lands in controversy are not within the scope of meaning of the above mentioned mineral statute and are not subject to sale by the commissioner under such statute. Said statute provides for sale of lands, but the applications of relator are in legal effect applications to purchase water. Farnham on Waters and Water Rights, vol. 1, p. 219; Mann v. Tacoma Land Company, 44 Fed. Rep., 27; Mann v. Tacoma Land Company, 135 U. S., 273; Morris v. United States, 174 U. S., 196; I. C. R. R. Co. v. City of Chicago, 173 Ill., 471; Baer v. Moran Bros. Co., 27 Pac., 470; Baer v. Moran Bros. Co., 153 U. S., 287; Rosbrough v. Picton, 12 Texas Civ. App., 113.

The settled public policy of this State has always been and is not to construe a statute authorizing a purchase of land as authorizing a location or award of submerged lands lying under the shallow waters of the lakes and bays or along the gulf coast of the State, or a grant of land as embracing such submerged lands in the absence of some express statutory provision to that effect, in the nature of an exception to the general rule. Act of December 19, 1836, 1 Gam., 1193, bot.; Hart. Dig., arts. 1631 and 1634; Acts, 1900, p. 31; General Laws of 1907, chap. 122, p. 320; State v. Delesdenier, 7 Texas, 76; Franklin v. Tiernan, 56 Texas, 618; Galveston v. Heidenheimer, 63 Texas, 559; Acts of 1891, p. 166; Acts 1897, p. 233; Acts 1853, p. 47.

Submerged lands under shallow waters of the lakes and bays of the State and along the gulf coast within territorial jurisdiction of this State are owned and held by the State, in trust for the benefit of the people of the State for public, or *quasi* public purposes, such as navigation, fishing, etc., and are not subject to disposition by the Legislature or under its direction for private ownership or purposes. Illinois C. R. R. Co. v. Illinois, 146 U. S., 387; Florida v. Black River Phosphate Co., 21 L. R. A., 189; I. C. R. R. Co. v. City of Chicago, 173 Ill., 471; McCloskey v. Pacific Coast Company, 160 Fed. Rep., 794; Conrad Investment Co. v. United States, 161 Fed. Rep., 829.

Mr. Justice Brown delivered the opinion of the court.

DeMeritt instituted this proceeding in this court to procure the issuance of a writ of mandamus to the Commissioner of the General Land Office requiring him to accept relator's applications to purchase two tracts of public land situated in Harris County, each tract containing 80 acres. The relator sought to purchase the land by virtue of the following articles of the Revised Statutes:

"Art. 3498a. All public school, university, asylum and public lands specially included under the operation of this title; all the lands now owned by the State situated within the reservation known as the 'Pacific Reservation,' which were taken off the market and reserved from sale by an Act approved January 22, 1883, containing valuable mineral deposits, are hereby reserved from sale or other disposition, except as herein provided, and are declared free and open to ex-

ploration and purchase under regulations prescribed by law, by citizens of the United States and those who have declared their intention of becoming such; provided, that all who have located and recorded valid claims under previous valid laws and have not abandoned same, but are engaged in developing same, shall have a prior preference right for ninety days after the passage of this title in which to relocate same under this title."

"Art. 3498j. Within twelve months after the filing of the affidavit hereinafter provided for, any person or association of persons qualified as required by article 3498a, shall have the right to purchase and obtain patent by compliance with this title, or any of the lands of the State which are specified or included in article 3498a, containing valuable deposits of kaolin, baryta, salt, marble, fire clay, iron ore, coal, oil, natural gas, gypsum, nitrates, mineral paints, asbestos, marl, natural cement, clay, onyx, mica, precious stones or any other non-metallic mineral and stones valuable for ornamental or building purposes or other valuable building material, in legal subdivisions, in quantity not exceeding one section; provided, that where any such parties shall have heretofore expended, or shall hereafter expend, five thousand dollars in developing the aforesaid mineral resources of any of said lands, such party shall have the right to buy one additional section and no more, and to include in the purchase any section or part thereof on which the work may have been done," etc.

The relator alleged that in pursuance of the law he had the said lands surveyed and the field notes returned to the General Land Office, which were approved as correct by the Commissioner. It is alleged, in detail, that the relator performed every act that the law required of him in order to entitle him to purchase the land. The respondent admitted the truth of all of the facts alleged in the petition, but averred "that the two tracts of submerged lands, which are described in relator's petition in this cause, are according to the official map of Harris County, Texas, and the chart of the U. S. Coast and Geodetic Survey, and in fact, under the shallow waters of San Jacinto Bay, which is an arm of Galveston Bay, which, in turn, is a portion of the Gulf of Mexico, and that all and every portion of each of the two tracts of land aforesaid is within tide water limits and under the ebb and flow of the tides from the high seas through the Gulf of Mexico, Galveston Bay, and San Jacinto Bay, aforesaid."

The facts alleged and admitted on both sides show the land to be submerged lands under the shallow waters of San Jacinto Bay, which is an arm of Galveston Bay, and that at ordinary tide the land is covered with water to the depth of eighteen inches, but when the tide ebbs the land is uncovered. The question which arises upon this state of facts is, does this land come within the terms "public land," as used in article 3498a, copied above, and is it subject to purchase under article 3498j?

Neither the title of the State to the land which was sought to be purchased nor the power of the State to sell the land is involved in this litigation, therefore, the exhaustive argument of learned coun-

sel for the relator upon those questions is not applicable to the facts in the record.

Undoubtedly the use of the language: "All public school, university, asylum and public lands," signifies that public lands mean different lands from the school, university or asylum lands, but it does not necessarily follow that it includes all other lands except those enumerated.

This court put a different construction on similar language in the following case: In 1889 the Legislature of this State granted to A. A. Wallace a certificate for land in which it was recited: "The said certificate may be located upon any of the vacant public lands of the State either within or without the several reservations heretofore · created by law." The certificate was located on Mustang Island, and the land of the island being offered for sale a bid was made for the land covered by the certificate. The Commissioner refused to accept the bid and an application was made to this court for a mandamus to compel the Commissioner to accept the bid. It was contended that the words, "any of the vacant public lands of the State," included islands along the Gulf Coast, but this court held in an opinion by Judge Williams that the islands were not included in such general language. Roberts v. Terrell, 101 Texas, 577.

The rule at common law is that a grant of land bordering on the coast where the tide ebbs and flows conveys title only to the line of ordinary high tide, unless there be something to indicate an intention to extend the grant beyond that line. Mann v. Tacoma Land Co., 44 Fed. Rep., 27; s. c. 153 U. S., 273; Morris v. United States, 174 U. S., 196; Galveston v. Menard, 23 Texas, 349; Rosborough v. Picton, 12 Texas Civ. App., 113.

In Rosborough v. Picton, cited above, the issue was the limits of a grant of land bordering on the Gulf Coast made to one Hynes by the Commissioner of Power and Hewitson's Colony, which grant embraced a part of the shallow waters of a bay where the tide ebbed and flowed. It was held in that case that the Commissioner had no authority to make a grant of such submerged lands, his power being limited to the Gulf Coast. The court said: "We think that there is no doubt that the proposition that the title to the land covered by the navigable waters of the bay did not pass by the grants, is well founded. According to both the common and civil law, an ordinary grant of land along the sea coast, made by the ministerial officer of the government, did not pass the title to land under water or beyond the coast line. This line was fixed by the common law at the point reached by ordinary high tide, and by the civil law at the mark of the highest tide. The exterior boundary line of the grant to Power and Hewitson was the sea coast (Sayles' Early Laws, 108; Hamilton v. Menifee, 11 Texas, 718), and no authority was given them over the waters of the sea, or of the bays and inlets, or of the soil under them. These are, by well settled principles, reserved for common use. Hence, the grants by the Commissioner of that Colony passed title only to land which was not under the waters of the sea. Galveston v. Menard, 23 Texas, 349; Galveston Surf B. Co. v,

Heidenheimer, 63 Texas, 559; Arnold v. Mundy, 1 Halstead (N. J.), 1; Den v. Sawyer, 2 Hawk's Law and Eq. (N. C.), 226; Martin v. Waddell, 16 Peters, 369." That opinion was approved by this court in Hynes v. Packard, 92 Texas, 44, saying: "In Rosborough v. Picton, 12 Texas Civ. App., 113, the title to the same land was involved, and the Court of Civil Appeals in a very clear opinion by Judge Williams decided that the land was not the subject of grant by the officer who executed the Hynes title, and that no right passed by such grants. We think the decision is correct. Hynes having no title conveyed none, and was liable upon his covenant of warranty."

There is nothing in articles 3498a and 3498j which indicates that the Legislature used the words, "public lands," in a sense other than that which the law attaches to them. It follows that the relator had no right to purchase, nor had the Commissioner power to sell, the soil lying below the line of ordinary high tide. In contemplation of law it was not land, but water.

It is therefore ordered that the application for mandamus be refused and that the respondent recover of the relator all costs of this proceeding.