MRS. CLARA LANDRY v. J. T. ROBISON, COMMISSIONER OF GENERAL
LAND OFFICE ET AL.

No. 3183.   Decided March 10, 1920.

(219 S. W., 819.)

1.—Oil and Gas—Permit to Prospect—Public Lands—Bed of Navigable
Stream.

By the civil and the common law, soil under navigable waters is treated as held by the State in trust for the whole people, and thereby withdrawn from the operation of general laws such as the Act of April 9, 1913, permitting prospecting of public lands for mining for oil and gas.   (P. 298).

2.—Same—Reservation by Statute.

The provisions of article 5338, Rev. Stats., defining navigable rivers and regulating the survey of lands thereon for individuals, had the effect to withdraw the beds of such streams from appropriation by individuals under the general laws of the State authorizing locations on its public lands. City of Austin v. Hall, 93 Texas, 597, followed.   (Pp. 299, 300).

3.—Same.

The Act of April 9, 1913, Rev. Stats., art. 5904, authorizing the issuance of permits to prospect for oil and gas on public land, did not operate as a repeal of article 5338, nor apply to or authorize the appropriation under it of rights in the bed of a navigable stream.   (P. 300).

4.—Same—Surveyed Land.

The fact that under the Act of April 9, 1913, one applying for permit to prospect for oil and gas in the bed of a navigable stream had same surveyed and field notes filed in the General Land Office, did not constitute it "surveyed land" within the meaning of the Act of March 16, 1917, which first opened the beds of navigable streams to such prospectors.   The survey being unauthorized by law, was without effect.   (Pp. 300, 301).

5.—Same—Conflicting Claimants—Case Stated.

After the passage of the Act of March 16, 1917, authorizing permits to prospect for oil and gas on public lands in the bed of a navigable stream, application for such permit was made as for unsurveyed lands and survey made and filed by applicant.   Subsequently another made application for such permit covering the same land, and treating it as surveyed land by virtue of a survey made and filed in the Land Office in 1916, before the law authorized such permit, by one whose rights thereunder had afterwards been cancelled.   Held that such prior survey, being unauthorized by law at the time, did not make the tract "surveyed land" within the  meaning of the statute; that the first applicant had properly treated the tract as unsurveyed land, and having complied with the statute was entitled to the permit.   (Pp. 297-301).

Original application by Mrs. Landry to the Supreme Court for writ of mandamus against Robison and others.

*John W. Parker, W. H. Russell,* and *T. M. West* for relator.—
The river bed and channel of the San Jacinto River is not embraced
in the Act of April 9, 1913, and any act of the Land Commis-
sioner of Texas thereunder in regard to such river bed and channel
is void.   Demerit v. Robinson, 102 Texas, 358;   Roberts v. Terrell,
101 Texas, 577;    Articles 3481 and 3498, Rev. Stat., 1895;    Acts
1895, page 197;    Art. 5904, Rev. Stats., 1911;    Chapter 173, Acts
1913;   Act of Dec. 19, 1836, I. Gam. Laws, page 1193; Hart. Digest,
arts, 1631, 1634;   Acts 1900, page 31;    Acts of 1907, Chap. 12,
page 320;    Texas Chan. & Doc. Co. v. State, 133 S. W., 319; State
v. Delesdenier, 7 Texas, 76;   Franklin v. Kessler, 25 Texas, 138;
Haynes v. Packard, 92 Texas, 44;    Rosborough v. Picton, 34 S.
W., 791;   City of Galveston v. Menard, 23 Texas, 349;    Bathing
Co. v. Heidenheimer, 63 Texas, 559; Minnesota v. Hitchcock, 185
U. S., 391;    Stockey v. Cissna, 119 Fed., 835;    Mann v. Tacoma
Land Co., 133 U. S., 273;    Baer v. Moran Bros., 153 U. S., 287.
    The term "surveyed land" in section 16 of the chapter 83, of the
General Laws of 1917, means lands that are surveyed under au-
thority of law.

*C. M. Cureton,* Attorney-General, and *W. F. Shenck,* Assistant,
for respondents.—The survey of land made by the county surveyor
of Harris County, Texas, under the request of P. J. Duffy, the
field notes of which were recorded by said surveyor in his records
and returned into the General Land Office and approved by the
Land Commissioner, together with the plat, was a recognized sur-
vey and legal for all purposes including a sale of the surface or a
leasing of the minerals therein.    Acts, 33rd Legislature, 1913,
Regular Session, p. 409, Sec. 4;    Revised Statutes, Article 5335
to 5347, inclusive; Acts 1913, p. 414, sec. 12 and sec. 7;   Acts 1917,
p. 164, sec. 16;    Acts 1st Called Session, 1913, chapter 18, sec. 4.
    The land in question was not subject to be filed on for mineral
purposes until after the forfeiture under the Acts of 1917, chap.
83, and after notice of such forfeiture had had time to reach the
county clerk of the county in which said lands were situated
through due course of mail.    Acts 1917, Regular Session, Chapter
83, p. 165, Section 19;    See also Section 16 of said Act.    Also
Section 22, latter part.    Also Section 26; Acts 1913, sec. 12.

    Mr. Justice GREENWOOD delivered the opinion of the court.
    Respondent P. J. Duffy, being duly qualified, and desiring to
obtain the right to prospect for and develop petroleum and natural
gas in 195 acres of land in the bed and channel of the San Jacinto
River, near Humble, in Harris County, under Chapter 173, ap-
proved April 9, 1913, of the General Laws of the 33rd Legislature,
p. 409, filed his written application therefor, on January 12, 1916,

with the county surveyor of Harris County, who immediately filed and recorded same, and, within ninety days, surveyed the 195 acres and delivered to said respondent field notes, together with said application, and thereupon said application and field notes, with fee, were filed with the Commissioner of the General Land Office, who, on April 9, 1916, approved same and issued to respondent Duffy a permit to prospect for and develop the petroleum and natural gas that might be under the surface of said 195 acres of land.

The San Jacinto River is a navigable stream within the meaning of Rev. Stats., Article 5338, retaining an average width of more than thirty feet.

Relator Clara Landry is the owner of whatever right was acquired by her deceased husband, Emmett Landry, who, being duly qualified, and desiring to obtain the right to prospect for and develop the petroleum and natural gas that may be in 156.3 acres of the bed and channel of the San Jacinto River in Harris County, being a part of the 195 acres surveyed for respondent Duffy, filed a written application for said right with the county surveyor of Harris County, on June 20, 1917, under chapter 83, approved March 16, 1917, of the General Laws of the 35th Legislature, page 158, and paid the filing fee, and the surveyor filed and recorded the application and, within ninety days, surveyed and platted the 156.3 acres. Emmett Landry thereafter, on June 30, 1917, filed the application, field notes, plat, and proper affidavit in the General Land Office, paying the filing fee and ten cents per acre for each acre applied for, and the Commissioner found same to be correct.

On July 6, 1917, the permit to respondent Duffy was cancelled by the Commissioner of the General Land Office for failure to comply with the terms of the permit to said respondent.

On July 6, 1917, the respondent N. E. Meador, who was duly qualified, filed with the county clerk of Harris County a written application for the right to prospect for and develop petroleum and natural gas in the 195 acres surveyed for respondent Duffy, referring for description of the land to the permit issued to Duffy and the field notes on which the same was based, and the county clerk filed and recorded the application and made the appropriate notation, and thereafter when the Commissioner of the General Land Office received said application, and accompanying sworn statement, he filed same and, on August 10, 1917, he issued to respondent Meador a permit purporting to confer on him and his assigns the exclusive right to prospect for and develop petroleum and gas within the area of said 195 acres of land. The claim of respondent Meador has since passed to the respondent West Production Company, save an 1/24 royalty interest reserved by respondent Meador.

The Commissioner of the General Land Office rejected the application of Emmett Landry because he was of the opinion that the Act of April 9, 1913, authorized the application of respondent Duffy and the survey and permit thereunder, and because he was also of the opinion that even if these proceedings were unauthorized, they had the effect to convert the 195 acres into "surveyed land," and that hence the application of respondent Meador alone complied with the Act of March 16, 1917, and therefore said respondent and his assigns had the exclusive right to prospect for and develop the petroleum and gas in the land.

The relator has succeeded to the right of an applicant who complied with every requirement prescribed by the Act of March 16, 1917, to entitle one to a permit to prospect for and develop petroleum and gas in the 156.3 acres tract, in the channel and bed of the San Jacinto River, provided said 156.3 acres tract · was, on June 20, 1917, "unsurveyed land" in the river channel and bed within the meaning of that Act.

Unless the 156.3 acres became "surveyed land" by virtue of the proceedings under the Duffy application, manifestly the tract had no such status.

We are of the opinion that the Act of April 9, 1913, under which the proceedings by Duffy were had, in no wise authorized same, and that Duffy's application, survey, field notes and permit were void.

It is the contention of respondents that the bed or channel of a navigable river comes within the meaning of "other public lands" in section 1, of the Act of April 9, 1913, whereby "all public school, University, Asylum and the *other public lands,* fresh water lakes, islands, bays, marshes, reefs, and salt water lakes, belonging to the State of Texas," are declared "included within the provisions of this Act" and "open to mineral prospecting, mineral development and the lease of mineral rights therein."

Had there been no statutory reservation of the beds or channels of navigable rivers, we do not think that such general language as "other public lands" could be held to include the soil beneath navigable waters. For, our decisions are unanimous in the declaration that by the principles of the civil and common law soil under navigable waters was treated as held by the state or nation in trust for the whole people. The trust impressed thereon withdraws such soil from the operation of general provisions like those of the Act of April 9, 1913, for the reason that nothing short of express and positive language can suffice to evidence the intention to grant exclusive private privileges or rights in that held for the common use and benefit. City of Galveston v. Menard, 23 Texas, 390; Rosborough v. Picton, 12 Texas Civ. App., 116, 34 S. W., 791; Hynes v. Packard, 92 Texas, 49, 45 S. W., 562,; Wiel on Water Rights in the Western States, section 898.

It was determined in Demerit v. Robison, 102 Texas, 358, 116 S. W., 796, that submerged land under the shallow waters of San Jacinto Bay, covered by the flow of the tide and uncovered by the ebb of the tide, did not come within the meaning of the phrase "public land" as used in the Act of 1895, p. 197, carried as article 5904 into the Revised Statutes of 1911. It had previously been declared in Roberts v. Terrell, 101 Texas, 577, that an island · was not subject to be appropriated by location of a land certificate, notwithstanding the Legislature had provided for the location of the certificate "upon any of the vacant public lands of the State, either within or without the several reservations heretofore created by law." To meet these decisions, the Act of April 9, 1913, expressly made subject to mineral exploitation "fresh water lakes, islands, bays, marshes, reefs, and salt water lakes." The Act of March 16, 1917, introduced for the first time as the subject of mineral permits "river beds and channels." The express addition, in 1917, of "river beds and channels" to the lands to be subjected to mineral exploitation and development shows the legislative construction that the language of the Act of April 9, 1913, did not embrace the beds and channels of rivers.

All doubt upon this question seems dispelled by section 2, of the Act of December 16, 1837, being article 5338 of the Revised Statutes of 1911, formerly article 4147, whereby all lands surveyed for individuals on navigable water courses are required to front one-half of the square on the water course, and whereby all streams so far as they retain an average width of thirty feet are declared navigable streams, and whereby it is provided that such streams shall not be crossed by the lines of any survey. This Court construed the statute in the case of the City of Austin v. Hall, 93 Texas, 597, 57 S. W., 565, in the following language: "The apparent object of the Congress of the Republic in enacting the law which is now embodied in article 4147 and of the several Legislatures which have continued it in force was to prevent locators upon the public domain from monopolizing the water of the State. At the time the act was passed, the great body of the lands of Texas was public domain, and was subject to location by many grants already in existence as well as those necessarily to be issued in the future, and the Congress, foreseeing the necessity of preserving in that territory the streams which afforded water, that the public might have the use of them, enacted this statute. By requiring the grant to be located, one-half of its front upon the stream, the locator was prevented from extending it up and down the margin and thereby controlling largely the water front on one side. By the prohibition against crossing the stream with the lines of a survey, the locator was likewise prevented from controlling the water front of the stream on

both sides, and thus the water of such streams would be preserved in a large measure to those who were entitled to locate the lands of the state. But, in addition thereto, by declaring such streams to be navigable, the State reserved the title to the beds thereof, which are subject to the control of the State." Of course, we could not say such general language as that used in the Act of April 9, 1913, related to lands which had been continuously reserved by the State from appropriation, by means of express statutory enactments, for more than Seventy-five years. Day Company v. State, 68 Texas, 552, 4 S. W., 865.

Section 21 of the Act of December 16, 1837, was not expressly repealed by the Act of April 9, 1913, and it is plain that there is no such positive contradiction between section 21 and any of the terms of the 1913 act as to result in an implied repeal of said section. Hence the terms of section 21 forbade a survey, under the Act of April 9, 1913, for an individual, of any part of the bed of a stream declared navigable because of the impossibility of constructing such a survey without a line thereof crossing the stream in whole or in part.

It was decided in Land Co. v. Thompson, 83 Texas, 179, 17 S. W., 920, that surveys astride Devils River, made in 1876 and 1877, constituted no appropriation of the land, to protect it from subsequent location: because forbidden by the statute and therefore illegal.

It follows that until the Legislature passed the Act of March 16, 1917, the law did not authorize, but forbade, the grant by the State to individuals of any right in the bed or channel of such a river as the San Jacinto.

We do not agree with the view that the actual survey of the 195 acres, by the county surveyor, under Duffy's application, and the approval and filing of the field notes, by the Commissioner of the General Land Office, made the 195 acres "surveyed land" within the meaning of the Act of March 16, 1917.

In order for the status of land, as surveyed or unsurveyed, to be affected by approved field notes, on file in the General Land Office, the survey of the land, and the filing and approval of the field notes by the Land Commissioner must not be void because violative of law.

Instruments deposited or filed in the General Land Office do not become archives thereof unless their deposit or filing was authorized by law, and it would be a strange rule which would fix the status of public land by instruments in the Land Office forming no part of its archives. Art. 82, R. S.

In Sibley v. Robison, 212 S. W., 933, the Court announced that land acquires the status of "surveyed land" when it "has been surveyed in the manner provided by law."

As the land covered by the application of Emmett Landry was "unsurveyed land," at the date of his application, and he caused all things to be done entitling him to the mineral permit applied for, we think it was clearly the duty of the Commissioner of the General Land Office to issue the permit, and the mandamus applied for is awarded relator.

*Mandamus awarded.*