

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXMMMEXXXIXXXXXXX
ATTORNEY GENERAL

Hon. C. H. Cavness                    Opinion No. O-5736
State Auditor                         Re:  River Bed Oil and Gas
Austin, Texas                              Leases

Dear Sir:

        Reference is made to your letter of December 3, 1943,
in which you request the opinion of this department on a num-
ber of questions involving the interpretation of various Acts
of the Legislature as they apply to oil and gas leases on river
beds and channels of navigable streams.

        As this opinion is confined in its entirety to mineral
laws applying to river beds and channels of navigable streams,
we briefly review the legislative Acts relating to them.

        Prior to 1917 river beds and channels of navigable
streams were not open to exploration for oil and gas under the
permit and lease system.  The Mineral Act of 1917 (Ch. 83, Acts
of 35th Leg. Reg. Sess. 1917) for the first time opened them
up to exploration and development.  This Act remained the basic
law, except as affected by Chapter 6, Acts of 37th Leg. 1921,
and Chapter 140, Acts of 39th Leg. 1925, amending subdivision
2 of Section 7, Chapter 83, Acts of 1917, until river beds and
channels were withdrawn from sale or lease under the provisions
of Chapter 22, Acts of 41st Leg., 3rd Called Session, 1929.

        Chapter 140, Acts of 1925, amending Chapter 83, Acts
of 1917, as mentioned above, made no change in the effect  of
Chapter 83 in so far as river beds and channels were concerned.

        The Sales Act of 1931 (Chapter 271, H.B. 358, Acts
of 42nd Leg. Reg. Sess. 1931) replaced existing laws governing
the sale or lease of public land.  This Act, however, did not
include and made no provision for the leasing or development
for oil and gas of river beds and channels.  Thereafter, the
same Legislature in the 2nd Called Session enacted Chapter 40,
creating the Board of Mineral Development, and establishing
a new system for the exploration and development of river beds
and channels.  When Chapter 271 was amended by the adoption
of House Bill 9, by the 46th Legislature, 1939, the provisions
of Chapter 40 were specifically adopted and made a part of that
amendatory Act.  Chapter 271, Acts of 1931, and the amendments

to it by subsequent Legislatures are now codified in Vernon's Annotated Civil Statutes as Article 5421c.

In connection with this review of the above Mineral Laws, and before taking up your questions it might be well to set out the well established rule of law to be applied in construing laws relating to river beds and channels. The Supreme Court in the case of State v. Bradford, 50 S.W. (2) 1065 held as follows:

"In view of the importance of this matter to the state and the whole people, the courts of this state have consistently held that all grants with respect to lands under navigable waters, such as river beds and channels, are strictly construed against the grantee; that, if there is any ambiguity in the Act, it will be construed in favor of the State; and unless the Act contains plain and unmistakable language conveying the land under river beds and channels, it will not be construed to include them. In other words, before a statute will be construed to include land under navigable waters, such as river beds and channels, it will have to be expressed in plain and positive language, and not in general language. Landry v. Robison, 110 Tex. 295, 219 S.W. 819; Roberts v. Terrell, 110 S.W. 1033; Dolan v. Walker, 49 S.W. (2) 695."

We will consider your questions in the order presented. Your first question is as follows:

"1. Does Chapter 40, Acts of the Second Called Session of the 42nd Legislature, which Act was approved October 6th, 1931, affect opinion no. 3044 as written?"

In your inquiry you explain that our conference opinion No. 3044, which is our Opinion No. O-523, makes no reference to Chapter 40, which was passed as an amendment to Chapter 271, Acts of 1931, in answering the questions presented there.

In this connection we note that the question presented for our consideration in that opinion was whether or not Section 10 of Chapter 271, General Laws of 1931, repealed the $2.00 per acre lease rental provision contained in Chapter 140, General Laws of 39th Legislature, 1925, as it applied to pre-existing river bed oil and gas leases. The question was answered in the negative, and we think properly so.

In response to your question, Chapter 271, Acts of 1931, specifically excluded river beds and channels from the provisions of the Act (Sec. 1, c. 271). The same legislature

enacted Chapter 40 in the 2nd Called Session providing for development by the State of river beds and channels, or leasing and contracting for the recovery of oil and gas, and creating the Board of Mineral Development. Chapter 40, while passed as an amendment to Chapter 271, was in effect an independent Act. It was evidently passed as an amendment in order to make it a part of the basic sales law--Chapter 271 was intended to be such a law.

Chapter 40 was not involved in the question presented for consideration, and does not affect our Opinion No. 00523 as written.

Your second question is as follows:

"2. Does Section 4 of Chapter 6, Acts of 1921, purport to eliminate the $2.00 rental payment as provided in subsection 2 of Section 7, Chapter 83, in the language of said Section 4, which provides in part.

'. . .and thereupon a lease shall be issued without the payment of any additional sum of money, etc.'

"If so, does this apply to permits heretofore issued? Section 1, Chapter 6, provides:

'That all permits to prospect for oil and gas heretofore issued on . . ., river beds or channels. . . .'"

Chapter 6 provides in part:

"Sec. 1. That all permits to prospect for oil and gas, heretofore issued on University land . . ., river beds and channels . . ., and which have not expired, be and they are hereby extended so that they shall remain in full force and effect for a period of five years from the date of issuance of the permit, conditioned only upon compliance with the terms of this Act. . . ."

"Sec. 2. The owner of a permit included in this Act shall pay to the State annually in advance during the life of the permit ten cents for each acre included therein, and if there should be any payments past due under the terms of the original permit such shall be paid within sixty days after this Act becomes effective, and if not so paid the term of such permit shall not be extended herein. . . ."

"Sec. 4.  If oil or gas should be produced in paying quantities upon the area included in any of the permits included in this Act, the owner of the permit shall report the development to the Commissioner of the General Land Office within thirty days thereafter, and apply for a lease. . ., and thereupon a lease shall be issued without the payment of any additional sum of money and for a period of not to exceed ten years, subject to renewal or renewals."

Leases on river beds and channels clearly come within the provisions of this Act.  However, Section 1 of the Act limits its operation to permits "heretofore issued."  In our Opinion Number O-730, when we considered the effect of Section 4 of Chapter 6 on permits and leases granted under the provisions of Chapter 83, Acts of 1917, as applied to University land, we held as set out on page 7 of that opinion, and we re-adopt such holding here, as follows:

"Clearly, Section 4 of Chapter 6 was not intended to affect in any manner permits issued subsequent to the effective date of Chapter 6, because its operation is expressly limited in Section 1 thereto to 'permits heretofore issued.'  If Section 4 of Chapter 6 is construed so as to repeal and abolish the requirements of the $2.00 per acre cash payment and the $2.00 per acre annual payment required by Chapter 83, of either of such payments, such construction and effect must necessarily be limited so as to apply only to leases resulting from permits issued prior to the effective date of Chapter 6.  Permits issued subsequent to that date would be wholly unaffected by the Act under any construction thereof."

In discussing your question as to whether or not Section 4 of Chapter 6, Acts of 1921, eliminates the two dollar rental payment as provided for in subdivision 2 of Section 7, Chapter 83, Acts of 1917, we first distinguish between the terms "permittee" and "lessee" in respect to the rights and obligations of each under the provisions of Chapter 83, Acts of 1917.  Chapter 83, Section 7, is as follows:

"Sec. 7.  If at any time within the life of a permit one should develop petroleum or natural gas in commercial quantities the owner or manager shall file in the General Land Office a statement of such development within thirty days thereafter, and thereupon the owner of the permit shall have the right to lease the area included in the permit upon the following conditions:

"1.   An application and a first payment of two dollars per acre for a lease of the area included in the permit shall be made to the Commissioner of the General Land Office within thirty days after the discovery of petroleum or natural gas in commercial quantities.

"2.   Upon the payment of two dollars per acre for each acre in the permit a lease shall be issued for a term of ten years or less, as may be desired by the applicant, and with the option of a renewal or renewals for an equal or shorter period, and annually after the expiration of the first year after the date of the lease the sum of two dollars per acre shall be paid during the life of the lease.   . . ."

The Galveston Court of Civil Appeals in the case of State v. Tidewater Oil Co., et al, 159 S.W.(2) 192, Writ of Error Refused, distinguished the terms "permittee" and "lessee" in respect to the rights, duties and obligations of each under the provisions of Chapter 83, Acts of 1917, in this manner:

"In the first place they do not, as this court reads the Mineral Act (Chap. 83) in its entirety demonstrate that such statute imposed upon permittees thereunder any obligation during their status as such either to develop the land for oil and gas or to make the two dollar payment here involved, since the Act merely conferred upon permittees the 'exclusive right to prospect for and develop petroleum and natural gas during the 'life' or 'term' of the 'permit' and required the $2.00 per acre payment to be made by lessees only.'

"That is, it plainly provides that permittees were given the right or privilege but not the bounden duty to develop the minerals during the life or term of the permit, as well as the further contingent privilege of thereafter applying for and obtaining a lease upon the land - on specified conditions - when they first developed the minerals in paying quantities thereon; hence no obligation nor legal duty he could not escape - so long as he was in that relationship only - was imposed upon a permittee."

Under the facts of the above case, Chapter 6, Acts of 1921, and its effect on permits and leases issued under Chapter 83, Acts of 1917, was not involved. However, the Acts in question there were similar in effect, and the rule of law announced must be applied to the question here.

Accordingly, we hold that the benefits of Chapter 6, Acts of 1921, were available only to those who obtained permits, and whose status did not change between the time of the effective date of Chapter 83, Acts of 1917, and the effective date of Chapter 6, Acts of 1921. Any permittee who had not developed the area in his permit, and had not applied for and obtained a lease under the provisions of Chapter 83, was entitled to such benefits as accrued to him under the provisions of Chapter 6. Contrariwise, any permittee who had developed the area in his permit, and had applied for and obtained a lease prior to the effective date of Chapter 6, was bound by the provisions of Chapter 83, and not eligible to any of the beneifts of Chapter 6. The provisions of Chapter 83 providing for $2.00 per acre first payment and $2.00 per acre annually became fixed obligations, and remained so throughout the life of the lease and any renewal or renewals thereto.

Our opinion No. O-730 is revised and modified in so far as it is in conflict with the subsequent decision of the court in the case of State v. Tidewater Oil Co., supra, and the holding in this opinion.

Your third, fourth, fifth and sixth questions will be considered together; they are as follows:

"3. Does Section 10, Chapter 271 (Art. 5421c), Acts of 1931, by its terms as originally passed May 29th, 1931, apply to or purport to apply to river bed leases?

"4. If Section 10 is construed as applying to river bed leases, then is such statute, so construed, constitutional?

"5. Section 10, Chapter 271, provides in part as follows:

'The provisions of this Article in respect to payments of rentals after production and the cessation of production shall apply to leases heretofore issued by the State on any area except lands belonging to the State University and eleemosynary institutions.'

Is this by the language 'shall apply to leases heretofore issued' retroactive and constitutional?

"6. Chapter 40 sets up a new mode of issuing leases on River beds. Does Chapter 40, Acts of Second Called Session of the 42nd Legislature, which by addition of a section to Chapter 271, amend the original

Act when no mention is made as to amending the caption to Chapter 271?"

In view of the answer given in reply to your first question, we do not think it necessary to discuss these matters further. However, in support of the answer given, we refer to the opinion of the Supreme Court in the case of Dolan v. Walker, 49 S.W. (2) 695, when the court in discussing the question said:

"The precise question before us for decision is: Did the Legislature in H. B. 358 authorize the sale or lease of river beds and channels of navigable streams by the Land Commissioner as sought to have done by relator in this case? By the enactment of Senate Bill No. 20, the Legislature withdrew all river beds and channels from sale or lease until otherwise provided for by law. Unless the provisions of House Bill 358 authorize the sale or lease of river beds and channels relator's claim must fall. The provisions of this Act should be construed in the light of the well established rule that legislative grants of property, rights or privileges must be construed strictly in favor of the State on grounds of Public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the State." (cases cited)

"When this test is applied by the foregoing rules and construed in the light of the public policy of this State to hold certain property such as river beds and channels of navigable streams in trust for all the people, we are constrained to hold that the Legislature, by the enactment of House Bill 358, did not place on the market for sale or lease river beds and channels of navigable streams. . . ."

Your seventh and eighth questions are as follows:

"7. Does Chapter 120, Acts of the 43rd Legislature, authorizing the revision of contracts heretofore made apply to such contracts heretofore made by the Board of Mineral Development only?

"8. Subsection 6a provided in part:

'It is hereby declared as to any and each lease and/or contract hereafter made by the Board of Mineral Development, etc.'

Subsection 6b provides in part:

'. . . further that said Board may modify said contract as aforesaid by adjusting up or down from time to time the State's portion of said oil and/or money payment, etc.'

"Does the Mineral Development Board have the authority to revise a lease heretofore executed without first having received a request for a revision from the Lessee?"

Chapter 120, Acts of the 43rd Legislature in Regular Session, 1933, amended Chapter 40, Acts of the 42nd Legislature, 2nd Called Session, 1931, by adding to that Act subsections 6a and 6b, and are codified in Vernon's Annotated Civil Statutes as a part of Article 5421c.

Subsections 6a and 6b are as follows:

"It is hereby declared, as to any and each lease and/or contract hereafter made by the Board of Mineral Development, to be the policy of this State, with reference to the development of all portions of beds of rivers and channels described in such lease and/or contract, that the activities of the State and of all lessees or contracting parties, their heirs, successors or assigns, under such lease and/or contract, shall conform to the valid laws of this State, and to the valid orders, rules and regulations of any agency of this State, applicable to the development, by others than this State, of petroleum and/or natural gas bearing land within the State; and each lease and/or contract hereafter made by the Board of Mineral Development shall be subject hereto.

"Subsection 6b. As to any and each lease and/or contract heretofore made by the Board of Mineral Development, such Board shall be, and it is hereby authorized and empowered to revise the same, with the consent of the lessees and/or contracting parties thereunder, their heirs, successors or assigns, in such wise as to subject such lease and/or contract thenceforth to the public policy declared in Subsection 6a. Such revision shall be accomplished by supplemental or modificatory instrument on such terms as the Board of Mineral Development may deem fair and advantageous to this State, but only after a proposal for such revision shall be formally made, in a public document, to the said Board of Mineral Development. . . ."

The provisions of these subsections seem clearly to mean, and we hold, that the Board of Mineral Development was authorized and empowered to revise "any" and "each" lease and/or contract that had been made prior to the effective date of the Act, but only after a proposal for such revision was formally made in a public document to the Board by the lessee or contracting party, their heirs, successors and assigns.

The word "hereafter" as used in Subsection 6a we construe to mean that the provisions of that subsection must be included in contracts or leases entered into by the Board after the effective date of Chapter 120.

Your ninth question is as follows:

"9. H.B. 9, Chapter 3, Regular Session of the 46th Legislature, 1939. An Act amending Section 6 and Section 8 of H.B. 358, being Chapter 271, Acts of the Regular Session of the 42nd Legislature and providing for control and disposition of lands set apart for permanent free school fund and asylum funds and mineral estate within tidewater limits; dedication of mineral estate to permanent school fund; School Land Board, creation and duties; Board of Mineral Development abolished. (Being Article 5421c-3, Vernon's Annotated Statutes).

" . . .

"Does the above statute have the effect of setting the minimum annual lease rental of $2.00 per acre on all areas except lands lying and being situated west of the Pecos River which may be at a price not less than $1.00 per acre?"

House Bill 9 provides in part as follows:

Sec 5.
1. All lands set apart for the permanent free school fund and the several asylum funds by the Constitution and the laws of this State and the mineral estate in river beds and channels . . . are subject to control and disposition in accordance with the provisions of this section and other pertinent provisions of this Act and other laws not in conflict herewith; . . .

2. The mineral estate in river beds and channels and in all areas within tidewater limits including . . . are hereby set apart and dedicated to the permanent school fund.

4. The duties of the School Land Board shall be to set all dates for the leasing and the sale of surveyed lands, and to determine the price at which any land, whether surveyed or unsurveyed, shall be sold and leased subject to the terms and conditions provided by law, except that no land shall be appraised at a less price than $2.00 per acre; provided, however, that lands lying and being situated west of Pecos River may be appraised at a price not less than $1.00 per acre."

It is our opinion that subsection 4 of Section 5 is applicable to leases on river beds and channels, and the figures mentioned are to be considered as a minimum consideration.

APPROVED JAN 15, 1944

/s/ Grover Sellers

ATTORNEY GENERAL OF TEXAS

APPROVED:   OPINION COMMITTEE
BY:         BWB   Chairman

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
    /s/ Jack W. Rowland
    Jack W. Rowland
    Assistant

JWR:BT:wb:ds