

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~COMMISSION~~
ATTORNEY GENERAL

Honorable Wm. J. Tucker
Game, Fish & Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. 0-5915
Re: Validity of sale by Commis-
sioner of the General land
Office of 5420 acres of land
in Calhoun County, Texas,
known as Green Lake, and jur-
isdiction of Game, Fish &
Oyster Commission in relation
thereto.

Reference is made to your request to this Department
for an opinion relative to the validity of the sale by the
Commissioner of the General Land Office of 5420 acres of land
in Calhoun County, Texas, known as Green Lake, and the extent
of the jurisdiction of the Game, Fish & Oyster Commission over
this property.

From the information furnished us by the Commissioner
of the General Land Office, as reflected by the records of his
office, it is shown that Green Lake was awarded to Elmer Yates
on July 13, 1918, by reason of his application of the same
date. The application to purchase and the award of July 13,
1918, were based on the application to the county Surveyor of
Calhoun County for a survey, and the resulting survey of July
1, 2, 3 and 4, 1913, of 5420 acres known as Survey No. 1,
Elmer Yates. The field notes and application for survey were
filed in the land office on July 23, 1913. Records in the
land office show this property to be in the name of Mary
Louise K. Bryan at the present time. It was leased for oil
and gas to the Magnolia Petroleum Company on August 2, 1943.

When the request for this opinion was received in this
office, it was brought to the attention of the parties inter-
ested in the property by virtue of the 1918 award. We later
attended a conference where the different questions involved
were discussed. Mr. Tom Fletcher of the firm of Vinson, Elkins,
Weems & Francis and Mr. R. T. Wilkinson, Jr. of the Magnolia
Petroleum Company were kind enough to submit a brief in sup-
port of their reasons why this sale of Green Lake should not
be disturbed, and why the State could not now successfully at-
tack the sale.

We have given this brief very careful study, and have considered it while writing this opinion. While our discussion of some of the points raised will be brief, we have nevertheless given them serious consideration.

Briefly, the following points were raised in this brief, and all are relevant to your opinion request:

1. The statutes referred to in the case of Welder v. State, 196 S. W. 868, did not prohibit the Commissioner of the General Land Office from selling Green Lake.

2. If the sale was prohibited in that Green Lake was reserved from sale, then the sale was validated by the subsequent enactment of the "Small Bill" (Art. 5414a, V.A.C.S.)

3. That subsection 4 of Article 5329, V.A.C.S. when applied to this sale would be a bar to recovery in the event of suit by the State.

Generally and in connection with all the questions presented, we review the case of Welder v. State, supra, as we consider that case authority on most of the issues involved here.

In that case the owners of the surveys bordering on Green Lake contended their boundary lines extended to the center of the lake. The State in order to determine the ownership of the lake brought suit in trespass to try title against the adverse claimants. Upon a trial in Travis County, judgment was rendered in favor of the State. Upon appeal the findings of fact filed by the trial court were adopted by the Court of Civil Appeals. That part of the findings of fact considered relevant here are set out below:

"'1. Green Lake, the subject of controversy in this case, is an inland fresh water lake, situated in Calhoun County, Tex., about 2½ miles from Guadalupe river, and is situated in the valley of the Guadalupe river, the eastern portion of said lake bordering upon the foothills which mark the beginning of the upland. The lake is shallow at the margin, gradually becoming deeper for a distance of a few hundred feet where it attains its maximum depth, the remainder of the bottom of the lake being parctically level and the water being of an average depth at the ordinary water stage of about 4 feet. On occasions of any considerable overflow of the Guadalupe river ( which occur not infrequently) the lake is filled by the flood waters of the

river, and this is the main source of the renewal of
its waters. During times of large overflows the
whole valley of the river to the foothills, including
the lake and all of the surrounding country, is
submerged. The lake contains approximately 6,000
acres of land, and is about 13 miles in circumference.'

"'II. Green Lake has been used and is valuable
principally as a watering place of stock belonging
to the owners of the surrounding lands. However,
fish in considerable quantities have been taken from
it and sold, and boats have been operated upon it
for the purpose of taking fish; and the lake is of some
value as a fishing preserve.'"

This additional finding was made at the request of the
appellee:

". . . I find that in its ordinary condition
Green Lake, having a depth of 4 feet over the greater
part of the lake, is susceptible of use for fish-
ing, pleasure and commercial boats, providing the
boats are of light draft."

The appellate court in affirming the judgment of the
trial court used the following language:

"Under the law as it now exists in this
State, Green Lake cannot be sold (R. S. 3980)
but is under the jurisdiction of the Game, Fish
& Oyster Commissioner. (Art. 4021b)."

While it is true the appellate court said: "The issue
in this case is not whether the State could grant title to
the land in the bed of a natural, permanent, fresh water lake,
but has it done so to Green Lake?" Nevertheless the findings
of fact filed by the trial court and adopted by the appellate
court were based on controverted issues material to the decision.
It was determined that Green Lake was a natural, permanent,
fresh water lake, and because of this fact, and the finding of
the appellate court that it was a navigable body of water, the
Court of Civil Appeals held that the calls in the respective
surveys indicated an intention to exclude the lake.

We consider as material the holding quoted above, that
under the law then in existence Green Lake could not be sold.
At least, it was a judicial interpretation of the existing
statutes by an appellate court whose decision on questions of
boundary was final. Article 1591, R. S. 1911.

It is well settled that the Sovereign has the power to grant or convey the beds of public waters. It is equally well settled that the Sovereign may reserve such property from sale and dedicate its use to all of the people. When there has been such a reservation by the Sovereign it may not be disregarded by its agents, and an attempted sale by the Land Commissioner under such circumstances, and without express authorization, is void. Roberts v. Terrell, 101 Tex. 577, 110 S. W. 733; DeMerrit v. Robison, 102 Tex. 358, 116 S. W. 796.

The question then is, did the statutes referred to in the Welder opinion reserve Green Lake from sale?

In 1905, the 29th Legislature enacted Chapter 90, a portion of which was codified in the Revised Statutes of 1911, as Article 3980. It is as follows:

"All the public rivers, bayous, lagoons, lakes, bays and inlets in this State . . . shall be, continue and remain the property of the State of Texas, except so far as their use shall be permitted by the laws of this State. So far as this use shall relate to the fish and oyster industry, the State Game, Fish & Oyster Commissioner shall have jurisdiction and control thereof according to the authority vested in him by the fish and oyster laws of this State. (Acts of 1905, p. 129)."

It is our opinion that this Article expressed a definite policy with respect to reserving lakes from sale. In 1911 the 32nd Legislature enacted Chapter 68, using more definite language in this respect. Section 2 of Chapter 68 is as follows:

"Sec. 2. Such of the fresh water lakes within this State as may not be embraced in any survey of private land shall not be sold, but shall remain open to the public; . . ."

It is our opinion that the Acts quoted from above expressly reserved Green Lake from sale. These Acts were in force and effect on July 13, 1918, when this property was awarded to Elmer Yates.

The second point raised is whether or not the sale of Green Lake, though it may have been made contrary to law, was validated by the subsequent enactment of the "Small Bill", Article 5414a.

Sections 1 and 2 of Article 5414a are as follows:

"Sec. 1.  All patents to and awards of lands
lying across or partly across water courses or
navigable streams and all patents and awards cover-
ing or including the beds or abandoned beds of
water courses or navigable streams or parts thereof,
which patents or awards have been issued and out-
standing for a period of ten years from the date
thereof and have not been cancelled or forfeited,
are hereby confirmed and validated.

"Sec. 2.  The State of Texas hereby relin-
quishes, quitclaims and grants to patentees and
awardees and their assignees all of the lands,
and minerals therein contained, lying across, or
partly across water courses or navigable streams,
which lands are included in surveys heretofore made,
and to which lands patents or awards have been
issued and outstanding for a period of ten years
from the date thereof and have not been cancelled
or forfeited. . . ."

It is to be noted that this Act has reference to "...
....lands lying across or partly across water courses or nav-
igable streams and all patents and awards covering or includ-
ing the beds or abandoned beds of water courses or navigable
streams or parts thereof. . . ." The cases in which this Act
has been involved have had to do with the effect of the Act
on surveys which crossed or partly crossed water courses or
navigable streams.  State v. Bradford, 121 Tex. 516, 50 S. W.
(2) 1065; Heard v. Town of Refugio, 129 Tex. 349, 103 S. W.
(2) 728.

The Act above referred to uses the terms water course
and navigable stream but no reference is made to a lake.  It
is generally recognized by the authorities that the terms
water course, navigable stream and lake have separate and dis-
tinct legal meanings.  This is particularly true with reference
to the legal distinction between a water course, navigable
stream and a lake.  A water course or navigable stream are so
different in their physical characteristics from a lake, that
the naming of the one, and omission of the other, in acts re-
lating to the disposition of public land, will exclude the
other.  Hoef v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R.
733; Jones v. Lee, 43 N. W. 855; Nee Pee Nauk Club v. Wilson,
96 Wis. 290, 71 N. W. 661; Restatement of the Law; Torts, Sec.
841-843; DeMerrit v. Robison, 102 Tex. 358, 116 S. W. 796.

The property under discussion here is a natural, per-
manent, fresh water lake.  It was held in Welder v. State,
supra, that the lines of surveys adjoining the lake did not

cross or partly cross the lake. The Elmer Yates Survey No. 1, on which the application and award of 1918 was based, encompassed the lake and did not cross it. If, since these original surveys were made, the lake through natural processes of erosion has extended over the lines of these surveys the new lands thereby covered by the public waters of the lake has become State property. State v. Maufrais, Court of Civil Appeals opinion, 175 S. W. (2) 739, Supreme Court opinion handed down on April 4, 1944, Motion for Rehearing overruled April 24, 1944; Manry v. Robison, 122 Tex. 213, 56 S. W. (2) 438; Diversion Lake Club v. Heath, 126 Tex. 213, 56 S. W. (2) 441. The "Small Bill" would have no application to this condition since it relates solely to survey which crossed water courses or navigable streams at the time the surveys were made, and not to water courses or public waters which have since the date of the original survey flowed over or across the lines of surveys. Maufrais v. State, supra.

In our opinion the "Small Bill" can have no possible application to the facts in this case.

The third point material in this discussion, and also raised in the brief, is whether or not subsection 4 of Article 5329 would be effective to bar recovery by the State in the event of suit.

The relevant part of Article 5329 is as follows:

"No sale made without condition of settlement shall be questioned by the State or any person after one year from the date of sale."

In our discussion under the first point in this opinion, we held that the sale of Green Lake was not authorized by law and that this property was expressly reserved from sale. Under our construction of the Acts referred to herein, and as interpreted in the Welder case, we think the Supreme Court in the case of Callahan v. Giles, 137 Tex. 571, 576, 155 S.W. (2) 793, states the rule of law that determines the effect of the one year statute as applied to the facts in this instance. In that case the Court held:

"We do hold, however, that all sales of public school land must be authorized by law. As to any sale of public school land neither authorized by law nor made under color of law, the one year statute of limitations above cited would not apply."

Summarizing the questions discussed herein, it is our

opinion that Green Lake at the time of the award in 1918 was reserved from sale; that the "Small Bill" is wholly inapplicable to the facts presented here; that the one year statute of limitations will not operate to defeat recovery of this property by the State.

We accordingly advise you that it is the opinion of this department that the Act of the Commissioner of the General Land Office in awarding Green Lake to Elmer Yates in 1918 is void, and of no force or legal effect.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Jack W. Rowland
Jack W. Rowland
Assistant

JWR:bt:wc

APPROVED SEP 21, 1944
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman