HARRY A. DOLAN v. J. H. WALKER, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 6094. Decided April 21, 1932.
(49 S. W., 2d Series, 695.)

362

*Gill, Jones & Tyler,* of Houston, *J. B. Robertson,* of San Antonio, *Dan Moody,* of Austin, and *Harry Dolan,* pro se, of Georgetown, for relator.

The Legislature in section 1 of chapter 271, here involved, having used general words as to school land and public domain to provide for sales thereof, thought it necessary to specifically except river beds and tide water lands; but in the provisions with regard to lease used the general words, *"all public free school land surveyed or unsurved"* without providing for any exception thereto. Therefore, the Legislature in this very act, having indicated that they regarded it as necessary to expressly make an exception of river beds and land under navigable waters to prevent their being included in the general language used in one section providing for sale, will be held to have intended to include land in river beds covered by similar general language thereafter used in the same act, when it did not provide for exception thereof.

The very Legislature that enacted said chapter 271, within a few months passed a resolution withdrawing river beds from lease, thus showing conclusively that it was their understanding that said chapter had opened school land in river beds to lease for oil development. Alexander v. State, 84 Texas Crim. Rep., 75, 204 S. W., 647; Arkansas v. Tennessee, 246.U. S., 158; City of Houston v. Potter, 41 Texas Civ. App., 381, 91 S. W., 389; Delesdenier v. State, 7 Texas, 76; F. & M. Nat. Bank v. Hanks, 104 Texas, 320, 137 S. W., 1120; Freeman v. Terrell, 115 Texas, 530; Gorham v. Settegast, 44 Texas Civ. App., 254, 98 S. W., 665; Landry v. Robison, 110 Texas, 295, 219 S. W., 819; Parker-Harris v. Tate, 135 Tenn., 509, 188 S. W., 54; Reynolds v. McArthur, 2 Pet., 417; State v. Robison, 118 Texas, 302, 30 S. W. (2d) 297; Speer v. Wood, 193 S. W., 785; United States v. Moore, 95 U. S., 760; Weeks v. Galveston, 51 S. W., 547; White v. U. S., 191 U. S., 545.

The true rule can only be that the general word "land" used without express limitation includes land under navigable waters unless there is a basis for an implied exception or proviso taking this class of land out of the operation of the statute. Hill v. Newell, 86 Wash., 227, 149 Pac., 951; Roberts v. Yarboro, 41 Texas, 452; State v. Brady, 102 Texas, 415, 118 S. W., 128.

*James V. Allred*, Attorney General, and *Geo. T. Wilson*, Assistant Attorney General, for respondent.

*R. J. Long*, of Wichita Falls, and *Williams & Williams*, of Austin, as amicus curiae.

MR. JUDGE SHARP of the Commission of Appeals delivered the opinion for the court.

Harry A. Dolan, as relator, invokes the original jurisdiction of the Supreme Court to secure a mandamus requiring J. H. Walker, Commissioner of the General Land Office, to approve his application to purchase a mineral lease on a certain portion of the Sabine River in Gregg County, Texas. It is alleged that such area of land, to-wit: The bed and channel of the Sabine River belongs to the public free school fund of Texas and is subject to mineral lease and explorations under the provisions of the act of the 42nd Legislature known as H. B. No. 358 (Laws, 1931, p. 452); that the bed and channel of the Sabine River is of a width of thirty feet and is a navigable stream within the meaning of article 5302, R. S., 1925.

It is further alleged that the area sought by relator is not embraced in any survey of the public lands of this State and is

not listed on the records of the Land Office and is not in actual conflict on the ground with land previously sold or appropriated and is not crossed by any survey lines and appears on the official land map as unsurveyed lands. That relator has paid all fees required by law in connection with his applications and filings and was the first person to file an application to have the above area surveyed after the enactment and effective date of the above mentioned act of the Legislature, and by reason of his applications and filings and the surveys made, relator has a fixed and vested preferential right to purchase and secure a mineral lease on that area of land for the development of the oil and gas resources of the same.

Respondent Walker rejected the application upon the ground that the area sought by relator was not subject to a permit by reason of the enactment by the Legislature of chapter 22, Acts of the 3rd Called Session, 41st Legislature (Laws, 1929, p. 526) known as Senate Bill No. 20, and furthermore for the reason that H. B. No. 358, supra, in express terms, excludes river beds and channels from its operations and that the Senate Concurrent Resolution No. 4, approved August 17, 1931 (42nd Leg., 1 c. s., p. 101), prohibits the sale and lease of river beds and channels.

Relator bases his application to purchase a mineral lease on the area described in the field notes filed with the county surveyor of Gregg County covering a certain portion of the bed and channel of Sabine River in Gregg County, upon the provisions of chapter 271, acts of the 42nd Legislature, being H. B. No. 358, supra. The pertinent parts of H. B. No. 358 material to a decision of this case read as follows:

"Sec. 1. All lands heretofore set apart to the public free school funds under the Constitution and laws of Texas, and all of the unappropriated and unsold public domain remaining in this State of whatever character, except river beds, and channels, and islands, lakes and bays, and other areas within tide water limits, are subject to control and sale under the provisions of this Act.

"Sec. 8. Lands subject to lease: All islands, salt water lakes, bays, inlets, marshes and reefs owned by the State within tide water limits, and that portion of the Gulf of Mexico within the jurisdiction of Texas, and all unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner to any person, firm or corporation for the production of the minerals, except gold, silver, platinum, cinnabar and other metals, that may be therein or thereunder, in accord-

ance with the provisions of this Act and subdivision 2, Chapter 4, Title 86, Revised Statutes of 1925, relating to leasing public areas, in so far as same is not in conflict herewith.

"Any person who discovers an unsurveyed area of school land which has not been listed on the records of the Land Office as school land, and is not in actual conflict on the ground with land previously sold or appropriated and which appears on the official Land Office map as unsurveyed land, may apply in writing to the county surveyor and have the same surveyed, and after the field notes thereof have been returned to the Land Office and approved and filed by the Land Commissioner, shall have a preference right for sixty (60) days thereafter, to purchase a mineral lease thereon at the minimum price fixed by the Land Commissioner, in addition to the other consideration provided herein."

■ In the construction of statutes certain fundamental rules control. The paramount rule in construing statutes is to ascertain and give effect to the intention of the Legislature. If the language or terms used in the statute are uncertain or confusing in arriving at the intention, it is proper to consider the general policy towards the matter legislated upon, the purpose of the Legislature, the evils to be remedied and the object to be accomplished. Cannon v. Vaughn, 12 Texas, 399; Higgins v. Rinker, 47 Texas, 393; City of Austin v. Cahill, 99 Texas, 172, 88 S. W., 542, 89 S. W., 552; Clary v. Hurst, 104 Texas, 423, 138 S. W., 566; Article 10, sec. 6, R. S., 1925.

■ With these rules in mind, let us analyze the parts in H. B. No. 358 pertinent to the issues involved in this case. In section 1 it provides that all lands heretofore set apart to the public free school funds and all of the unappropriated and unsold public domain remaining in this State of whatever character, "except river beds, and channels, etc." are subject to control and sale under the provisions of this Act. It will be seen that the Legislature, in plain and positive language, in the first section of the act excepted from sale river beds and channels of navigable streams. There is no doubt or uncertainty about the language used or what was the intention of the Legislature upon this question. However, it is contended by relator that the language in other portions of the Act, and especially section 8 thereof, shows that it was the purpose of the Legislature to place river beds and channels upon the market for sale or lease.

We have carefuly read section 8 and the other sections of this Act and we fail to find any language therein, when fairly

construed, which shows that it was the intention of the Legislature to override the intention expressed in section 1, wherein it is stated in express terms that river beds and channels were excepted from sale under the provisions of that Act. It will be noted that the second paragraph of section 8 relates to the discovery of an unsurveyed area of school land and no language contained therein, when fairly and reasonably construed, can be made to include river beds and channels.

■ The courts of this State have repeatedly held in construing statutes that when there are words in a statute expressive of a particular intent, and other words indicating a general intent inconsistent therewith, the particular intent must be taken as an exception to the general rule so that all parts of the law may stand. Howard Oil Co. v. Davis, 76 Texas, 630, 13 S. W., 665; F. & M. Bank v. Hanks, 104 Texas, 320, 137 S. W., 1120. The rule is also well established that the courts cannot adopt the construction of a section of a statute, no matter how plainly required by its language standing alone, which would defeat the intention of the Legislature as reflected in the whole statute. Moorman v. Terrell, 109 Texas, 173, 202 S. W., 727.

In construing the provisions of H. B. No. 358 it should be done in the light of the general policy of this State with respect to the sale of river beds and channels of navigable streams. In 1837 the following statute was enacted and has been brought forward in our Revised Statutes, including those of 1925, and it reads:

"Art. 5302. All lands surveyed for individuals, lying on navigable water courses, shall front one-half of the square on the water course and the line running at right angles with the general course of the stream, if circumstances of the lines previously surveyed under the laws will permit. All streams so far as they retain an average width of thirty feet from the mouth up shall be considered navigable streams within the meaning hereof, and they shall not be crossed by the lines of any survey. All surveys not made upon navigable water courses shall be in a square, so far as lines previously surveyed will permit."

In this connection it is contended that it has been the public policy of the state that river beds and channels of navigable streams should be held by the State in trust for the whole people. That in view of the nature of the property and the trust with respect thereto imposed, if the Legislature was authorized to permit the sale or lease thereof it would have to be done in

plain and explicit language. In construing the operation of the general provisions of the act of April 9, 1913, in the case of Landry v. Robison, 110 Texas, 295, 219 S. W., 819, Judge Greenwood, in rendering the opinion of the Supreme Court, said:

"Had there been no statutory reservation of the beds of channels of navigable rivers, we do not think that such general language as 'other public lands' could be held to include the soil beneath navigable waters. For, our decisions are unanimous in the declaration that by the principles of the civil and common law soil under navigable waters was treated as held by the state or nation in trust for the whole people. The trust impressed thereon withdraws such soil from the operation of general provisions like those of the Act of April 9, 1913, for the reason that nothing short of express and positive language can suffice to evidence the intention to grant exclusive private privileges or rights in that held for the common use and benefit. City of Galveston v. Menard, 23 Texas, 390; Rosborough v. Picton, 12 Texas Civ. App., 116, 34 S. W., 791, 42 S. W., 1033; Hynes v. Packard, 92 Texas, 49, 45 S. W., 562; Wiel on Water Rights in the Western States, sec. 898."

But it is contended that the Legislature by the terms of the act of February 23, 1900, set apart for the public free school funds all of the unappropriated public domain of the State of Texas including river beds and channels of navigable streams. It is also contended that in 1917, the Legislature authorized the sale or lease of river beds and channels of navigable streams for mineral purposes.

In 1929 the Legislature enacted Senate Bill No. 20, chapter 22, Acts of the 3rd Called Session, 41st Legislature, p. 526. The pertinent parts thereof read:

"Section 1. That the surface and the minerals therein of all river beds and channels, and of all unsurveyed public free school lands, and portions of the same, in the State of Texas, are hereby withdrawn from sale or lease until otherwise provided by law.

"Section 1a. Provided, however, that such withdrawal from sale and lease of unsurveyed public school land shall not apply in cases where application of inquiry has been heretofore made therefor and on which suit is now pending."

It is undisputed that Senate Bill No. 20 (supra), if valid, was enacted prior to the time relator filed his applications to purchase mineral leases involved in this case.

In the case of F. B. Jackson, Jr. v. J. H. Walker, Ante., 49 S. W. (2d) 693, Jackson, as relator, sought a writ of

mandamus against Walker, as Commissioner of the General Land Office, to compel him to approve and file his applications, with reference to his application to prospect for oil and gas on a certain portion of the bed of the Sabine River in Gregg County, and based his application under the provisions of Chapter 83 of the Acts of 1917, Regular Session, p. 158, an Act approved March 16, 1917, and all amendatory acts thereto. The respondent in that case rejected the application of the relator for the reason that the area sought for purchase was not subject to permit by reason of the enactment by the Legislature of Chapter 22, Acts of the 3rd Called Session, 41st Legislature, known as Senate Bill No. 20, supra, which withdrew river beds and channels from the operation of the mineral law. Relator admitted in that suit that if Senate Bill No. 20 was a valid law, the respondent correctly rejected his application. This court in that case upheld the validity of Senate Bill No. 20 and we refer to that opinion for a full discussion of the validity of that Act.

The Legislature of 1931, at its First Called Session, adopted S. C. R. No. 4, approved by the Governor August 17, 1931 (supra), declaring "that all river beds are off the market and not subject to sale or lease."

■ The precise question before us for decision is: Did the Legislature in House Bill No. 358 authorize the sale or lease of river beds and channels of navigable streams by the Land Commissioner as sought to have done by the relator in this case? By the enactment of Senate Bill No. 20 the Legislature withdrew all river beds and channels from sale and lease until otherwise provided for by law. Unless the provisions of H. B. No. 358 authorize the sale or lease of river beds and channels relator's claim must fall. The provisions of this Act should be construed in the light of the well established rule that legislative grants of property, rights, or privileges must be construed strictly in favor of the State on the grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the State. Empire Gas & Fuel Co. v. State, Ante., 47 S. W. (2d) 265: 36 Cyc., page 1177; Lewis' Sutherland Statutory Construction, vol. 2, sec. 548; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S., 24, 11 S. C. Rep., 478, 35 L. Ed., 55; 18 R. C. L., p. 1220; Coosaw Min. Co. v. South Carolina, 144 U. S., 550, 12 S. Ct., 689, 36 U. S. (L. ed.), 537. It is unnecessary to pass upon other issues not involved in this case.

Wher this Act is tested by the foregoing rules and construed in the light of the public policy of this State to hold certain property such as river beds and channels of navigable streams in trust for all the people, we are constrained to hold that the Legislature, by the enactment of H. B. No. 358, did not place on the market for sale or lease river beds and channels of navigable streams and that the Commissioner of the General Land Office had no authority to approve the application made by the relator for the purchase or lease of any part thereof.

Relator's application for a mandamus should be denied.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.