

**THE ATTORNEY GENERAL**

**OF TEXAS**

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 13, 1947

Hon. Bascom Giles, Chairman,    Opinion No. V-405
School Land Board
Austin, Texas            Re: Constitutionality of
                              Art. 924, V.P.C., and
                              related questions con-
                              cerning oil explora-
                              tion work in the Gulf
                              of Mexico.

Dear Sir:

    The Board has requested our opinion on several questions concerning geophysical explorations within the State's boundaries in the Gulf of Mexico, as follows:

    "1. Is Article 924, V. P. C., prohibiting the use of dynamite and explosives in the waters of the State, applicable to the Gulf of Mexico, and if so, is the statute constitutional?

    "2. Does the Land Commissioner or the School Land Board have authority to make rules permitting and regulating geophysical exploration work on State lands within the Gulf of Mexico?

    "3. Is the State entitled to compensation for the privilege of geophysical exploration of Gulf lands conducted by those who do not have leases thereon?"

    Your first question obviously relates to the constitutionality and applicability of Article 924, V.P.C., to geophysical exploration involving the use of dynamite in the waters of the Gulf of Mexico.

    Article 924, V. P. C., is as follows:

    "It shall be unlawful for any person to place in any of the waters of this State any poison, lime, dynamite, nitroglycerin, giant powder, or other explosives or to place in

such waters any drugs, substances or things
deleterious to fish life for the purpose of
catching or attempting to catch fish by the
use of such substances or things, or for any
other purpose whatsoever, provided however
that in event it becomes necessary to place
any explosive in waters in connection with
construction work, same may be authorized by
written order of the County Judge of the Coun-
ty where the work is to be done.

"Any one violating any provision of this
Act shall be deemed guilty of a misdemeanor
and on conviction shall be fined not less than
Fifty Dollars ($50.00), nor more than One Hun-
dred Dollars ($100.00), and shall serve a sent-
ence in the county jail of not less than sixty
(60) days, nor more than ninety (90) days."

It is conceded that this Article is penal and
a misdemeanor. In construing this particular kind of
statute, the Texas rule is to construe the law liberally
with a view to carrying out the intent of the Legislature.
Art. 7, V. P. C. In some cases it has been held that
strict construction applies only to those statutes creat-
ing the higher penal offenses and not to mere misdemean-
ors. Zucarro v. State (Crim. App.) 197 S. W. 982, 983;
Randolph v. State, 9 Tex. 521. This statute falls with-
in that class wherein the Legislature is exercising its
power to control and protect fish. According to the laws
of this State, as well as all of the other States, the
rule is that such statutes should be liberally construed
in favor of their validity, and that they will not be
stricken down unless the provisions therein are unreason-
able and arbitrary. Tuttle v. Wood, Texas Civil Appeals,
35 S. W. (2d) 1061, error refused.

Another rule of importance in construing such
statutes is that the interpretation should not be extend-
ed so as to cover an evil or offense not intended to be
remedied or prevented. The statute should be construed
in the light of the evil which the Legislature intended
to prohibit or suppress when a practical application of
the statute is made. 50 American Jurisprudence 440, Sec-
tion 416.

Measuring this Article by these standards, let
us first ascertain the legislative intent and the mis-
chief or wrong to be prevented. The 44th Legislature,

Acts 1935, page 646, chapter 260, when it amended this Act provided:

> "That it shall be unlawful for any person to place in any of the waters of this State any . . . dynamite . . . or other explosives . . . for the purpose of catching or attempting to catch fish by the use of such substances or things, for any other purpose whatsoever . . ."

This language is substantially different from that employed in the prior law which read:

> "The catching, taking or attempt to catch or take any fish, green turtle or terrapin in any of the salt or fresh waters, lakes or streams of the State by . . . dynamite . . . or other explosives . . . is hereby prohibited . . ."

In the prior Act the substance of the offense and the evil to be prohibited was "the catching, taking or attempt to catch or take any fish, etc., by the use of dynamite, etc." In the present law it is clear that the substance of evil to be prevented is the placing in any of the waters of this State dynamite etc., for any purpose whatsoever except in connection with construction work which is lawful only when done with the permission of the County Judge of the County wherein the construction is being done. Underlying both Acts, prior and present, is the fundamental intent of the Legislature to conserve the fish life of the State. This is expressed in the caption of the present Act as follows:

> " . . . making it unlawful to use certain explosives or other things harmful to fish in any of the waters of this State . . ."

Again in the emergency clause of the Act the same intent is expressed:

> " . . . the fact that the present law does not provide an adequate penalty for the use of dynamite or other harmful things used for the purpose of taking fish, and that such things are used to the detriment of the general interest of the public of this State in such natural resources . . ."

The offense to be prevented therefore is simply the placing in any of the waters of this State any of the substances enumerated. This is manifest by the use of the phrase "or for any other purpose whatsoever."

As this Article applies to seismic operations in the Gulf, which require charges of dynamite to be set off, the question may arise as to whether the Act applies to such operations when the purpose is not that of "catching or attempting to catch fish by the use of such substances or things". The effect of the phrase "or for any other purpose whatsoever" then becomes very significant. The reference to this phrase which we have made heretofore was to show the manifest purpose of the Legislature in passing this Act in connection with the offense to be prohibited. We are now concerned with whether this phrase falls under the prohibition of a rule of law known as ejusdem generis. That rule is where general words follow an enumeration of particular or specific things enumerated the specific or particular things control. The rule is especially applicable to statutes defining crimes and regulating punishments. But this rule is not arbitrary. From 39 Texas Jurisprudence, page 204, it is said:

> "It does not control where other portions of the statute disclose a different intent and meaning, and it will yield to the rules requiring that statutory language be given its plain meaning, and that every part of a statute be given effect."

To be consistent with the policy of the Legislature in passing this Act, we must give full effect to this phrase "or for any other purpose whatsoever". To strike it out would be to defeat the purpose of the Legislature, which is to prevent the placing in any of the waters of this State dynamite or other explosives. It will be noted also that the enumerated purposes of "catching or attempting to catch fish by the use of such substances or things" are not joined with the phrase by the conjunction "and". Rather, the phrase is set apart disjunctively by the use of the word "or". To disassociate the phrase from the statute would imply an attempt on the part of the Legislature to permit the wanton or wilful killing of fish so long as the purpose was not strictly to catch or attempt to catch fish by the use of such substances, when the very essence of the legislative intent is to prevent harm to the fish for any purpose whatsoever.

In the case of Schmidt v. State, 149 N. W. 388, the Supreme Court of Wisconsin construed exactly the same phrase in the light of a similar statute and reached the same conclusion. There the statute prohibited the setting of a gun "for the purpose of killing game, . . or for any other purpose". The defendant argued that the gun was set to protect property and frighten boys who were likely to enter the premises for the purpose of stealing apples and therefore the statute did not cover such purpose. The Court said:

"The statute forbids the setting of a gun for the purpose of killing game, 'or for any other purpose.' The intent of the Legislature was to prevent the setting of guns generally."

To the same effect is the case of Knoxtenn Theatres, Inc. v. McCanless (Supreme Court of Tennessee), 151 S. W. (2d) 164.

Immediately after the phrase "or for any other purpose whatsoever" is a proviso exempting or classifying certain operators from the reach of the law, as follows:

"Provided however that in event it becomes necessary to place any explosives in waters in connection with construction work, same may be authorized by written order of the County Judge of the County where the work is to be done."

It may be argued that the law is unconstitutional in that this provision in exempting construction work violates the equal protection and discrimination provisions of the Constitution. We are guided by the rule stated in 9 T. J. 558, as follows:

"While the constitutional guaranty does not forbid the classification of subjects and persons for the purpose of regulatory legislation, it does require that the classification be, not arbitrary, or unreasonable, but based upon a real and substantial difference, having relation to the subject of the particular enactment."

See also Watts v. Mann, Texas Civil Appeals, 187 S. W. (2d) 917, error refused; Sportatorium, Inc., v. State, Texas Civil Appeals, 115 S. W. (2d) 483, error dismissed, and 16 C. J. S., p. 924. It is even held that in passing regulations regarding the preservation of its fish the State may make classifications of persons in connection with the regulations so long as the classification is not unreasonable in relation to the subject and purpose of the regulation and not arbitrary or unjustly discriminatory. 27 Corpus Juris, 964, et seq.

The provision here does not fall within the prohibition of unjust discrimination or arbitrary and unreasonable legislation. It is obvious that the Legislature, after it provided "or for any other purpose whatsoever", realized that some necessary construction would have to be made in the waters of the State. Without the proviso the Act would prevent such work. In this reasoning, the proviso is a reasonable classification and exemption. The objection that it could not be equally applied to waters outside a county has been cured by the extension of coastal County boundaries to the State's southermost boundary in the Gulf. S. B. 338, 50th Legislature. It is presumed that you have extended, or will soon extend southward, the East and West boundaries as required by the statute.

It may be contended that the provision wherein the County Judge is empowered to issue permits for construction is an unwarranted delegation of power. The Legislature may in its discretion delegate to other agencies or arms of the State, County or municipalities, the power to carry out the provisions of the law, where such delegation is reasonable and necessary. 16 C. J. S., p. 548; 9 T. J. 493, et seq.; Tuttle v. Wood, supra.

It has been contended in briefs filed with this office that the present exploration work is in connection with construction, being necessary in order for oil operators to know how and where to build derricks, sink pipe, and drill for oil and other minerals. However, as we understand the facts, the uses of dynamite in explorations about which you inquire are on lands not now under mineral lease from the State. The primary purpose of such work is to determine what lands private concerns will seek to lease or bid upon when sales are made. Therefore, seismic explorations by private concerns on Gulf lands not now held by them under lease cannot be reasonably classified as "necessary in construction work" so as to come within the exception contained in the statute. With respect to such unleased lands, it is unlawful to use dynamite in the waters covering same.

Obviously a different rule applies to lands which have been leased or which may be leased hereafter from the State. When the lessee in good faith decides he must determine how and where to construct a derrick, drilling rig, etc., upon such lands and shows that use of dynamite is necessary in connection with such work, the County Judge of the proper County may permit such use under the proviso in Article 924, V. P. C. It is commonly known that detail work must be accomplished by exploratory methods which sometimes require use of explosives before a lessee can determine how and where to conduct actual construction and development operations on the lease he has purchased. Any of such operations reasonably necessary in connection with good faith construction work could be permitted by the County Judge of the County in which the submerged land is located.

By the use of the terms "in any of the waters of the State" we believe the Legislature fully intended that the placing of dynamite or other explosives in the waters of the Gulf should be as unlawful as in inland waters of the State. In the prior Act the Legislature specifically said:

"... in any of the salt or fresh waters, lakes or streams in the State ..."

In amending the Act, the 44th Legislature rather than enumerate the various kinds of waters, simply covered all waters by the term "in any waters of this State". The Legislature has in many other Acts recognized its property rights in the submerged lands of the Gulf of Mexico. With specific reference to fish and other aquatic animal life, the Legislature passed Article 4026, V. C. S., which among other things, provided:

"All of the public rivers, bayous, lagoons, creeks, lakes, bays and inlets in this State, and all that part of the Gulf of Mexico within the jurisdiction of this State, together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the State of Texas, except in so far as the State shall permit the use of said waters and bottoms, or permit the taking of the products of such bottoms or waters, and in so far as this

> use shall relate to or affect the taking
> and conservation of fish, oysters, shrimp,
> crabs, clams, turtle, terrapin, mussels,
> lobsters, and all other kinds and forms of
> marine life, . . ."

In view of this Act, it is manifest that by the use of the terms "in any of the waters of this State" the Legislature intended that the waters of the Gulf of Mexico over which the State has jurisdiction be included therein. Those waters and the lands thereunder are just as much a part of the State of Texas as the Capitol grounds, and have been since 1836 when the Congress of the Republic first set the boundaries of Texas three marine leagues from shore in the Gulf of Mexico. The salt water marine life within those waters are just as much the property of the State as fresh water bass or perch. The Legislature intended in Article 924 to protect the salt water fish just as much as the fresh water fish.

Your second question, concerning the authority of the Land Commissioner or School Land Board to permit and regulate exploration work on the lands in question, should be considered first with respect to leased lands. It is clear that an oil and gas lease sold to the highest bidder by the School Land Board, under the provisions of Article 5421c, as amended, carries with it the right to make geophysical explorations as well as other explorations and development for oil and gas on the leased property. No further permit is necessary for such operations so long as they do not conflict with other laws, such as Article 924, V. P. C.

It is also clear that the Land Commissioner, with respect to leased lands, may make rules and regulations concerning the exploration and other operations conducted on submerged lands, so long as they do not conflict with Legislative Acts. Article 5366, V. C. S., carried forward by reference in Article 5421c-5, V.C.S., provides:

> "The development of wells and the development and operation upon the areas included herein shall be done so far as practicable in such manner as to prevent such pollution of the water as will destroy fish, oysters and other sea food. The Game, Fish and Oyster Commissioner shall enforce such rules as the Commissioner of the General Land Office may prescribe for that purpose."

Therefore, as to leased land, the Commissioner of the General Land Office may make rules and regulations which restrict seismic operations so as to eliminate many of the practices injurious to the marine life of the Gulf. Any rules as to use of dynamite and explosives must be subject to Article 924, V. P. C., which means that the lessee may use the same on the leased property only when necessary in connection with construction work, and after obtaining a permit from the County Judge as provided therein. In order to properly protect fish and marine life in operations under such a permit, the County Judge should grant same under the condition that the lessee will abide by the rules and regulations made by the Land Commissioner regarding use of explosives on State leases.

As to unleased Gulf lands, it is our opinion that the Land Commissioner and the School Land Board have no authority to grant a permit or make rules which would permit and regulate geophysical explorations thereon. When a private concern enters upon public school lands, whether upland or submerged, and makes geophysical surveys, which reveal to some extent the possibilities of the land producing oil, a valuable right has been enjoyed and valuable information has been gained. Aronow v. Bishop, 107 Mont. 317, 86 P. (2) 644; Ohio Oil Co. v. Sharp, 135 F. (2) 303.

The scientific information obtained by geophysical methods is itself a valuable property right, and private landowners usually receive compensation for the valuable privilege given a private concern to obtain such information. Layne La. Co. v. Superior Oil Co., 209 La. 1014, 26 So. (2) 20.

Such geophysical rights are an incident of the mineral estate, and this, in Gulf lands, has been set apart to the Public School Fund. Their sale or disposition is, therefore, within the exclusive province of the Legislature, and can never be given away. Armstrong v. Walker, 73 S. W. (2) 520.

Any lease or sale of rights in those State lands which are held in trust for the whole people, as is the bed of the sea, must be expressly authorized by the Legislature. Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S. W. (2) 410; Grayburg Oil Co. v. Giles, 143 Tex. 490, 186 S. W. (2) 680; Dolan v. Walker, 121 Tex. 361, 49 S. W. (2) 695; Landry v. Robison, 110 Tex. 295, 219 S. W. 817; DeMeritt v. Robison, 102 Tex. 358, 116 S. W. 796.

The Legislature has authorized the grant of such valuable rights with respect to oil and gas only as an incident to oil and gas exploration and development under leases, for which the purchaser must pay the highest bid. There is no other authority under which the School Land Board or Commissioner may permit the gathering of this valuable information. This has been the consistent holding of this office under this and past administrations. Opinion No. O-1172, September 15, 1939, made the same determination with respect to Texas Prison lands, and a subsequent Legislature passed a statute authorizing such exploration permits on Prison lands for a valuable consideration. Article 6203aa, V. C. S.

For the same reasons, you would not have the authority to make rules and regulations which would permit such exploration on unleased Gulf lands.

We realize that it would be of great advantage to the School Fund in much higher bonus payments for leases if permits could be made (with adequate compensation) for the continuation of geophysical exploration of Gulf lands. We also realize that enforcement of our laws on this subject will hereafter restrict Gulf exploration work to lands now leased or which will be leased at the next sale on November 4. However, under our system of Government, we must operate in accordance with the law until the Legislature changes the law. All of these matters are within the province of the Legislature. The School Land Board foresaw the need for a new law on this subject before the 50th Legislature convened and recommended the passage of a Bill which would allow exploration permits after payment of due compensation therefore. The Legislature did not see fit to provide such an Act, and the proposal (House Bill 50) died in Committee.

Our answer to your second question partially answers your third inquiry, whether private concerns owe the State compensation for information already gained without a permit or lease on Gulf lands. It is our opinion that the State is justly due compensation in the form of damages for the reasonable value of the privilege exercised by those companies which have already explored the lands without leases thereon. It is our view that the State, for the Public School Fund, has the same cause of action in this regard as a private owner whose land has been explored geophysically without permission. In this connection see Layne La. Co. v. Superior Oil Co.

209 La. 1014, 26 So. (2) 20; Angelloz v. Humble Oil Co., 196 La. 604, 199 So. 656; and Shell v. Scully (C.C.A.,La.), 71 Fed. (2) 772. With your approval, this office will institute proceedings for such recovery.

## SUMMARY

1. Article 924, V. P. C., prohibiting the use of dynamite in the waters of Texas, except for construction purposes, applies to the waters of the Gulf of Mexico within the State's boundaries, and is constitutional. The use of explosives in connection with geophysical explorations in such waters of the Gulf is unlawful, except on lands leased from the State and then only in accordance with the exception in Article 924 when necessary in connection with construction work on said leases.

2. The Land Commissioner has authority to make rules and regulations for exploration work only on leased lands, and then subject to Article 924, V. P. C. There is no authority for granting a permit or making rules which would permit and regulate such explorations on unleased lands.

3. Private concerns which have obtained geophysical information on Gulf lands without permit or lease are liable to the State in damages for the value of the privilege so exercised.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Charles E. Crenshaw
Assistant

Ben H. Rice, III
Assistant

APPROVED:

ATTORNEY GENERAL.

CEC:jmc