TEXAS INDUSTRIAL ACCIDENT BOARD et al., Appellants,

v.

INDUSTRIAL FOUNDATION OF THE SOUTH, Appellee.

No. 7717.

Court of Civil Appeals of Texas, Beaumont.

July 10, 1975.

Rehearing Denied Aug. 21, 1975.

Second Rehearing Denied Sept. 11, 1975.

Frank W. Elliott, Austin, for appellants.

George J. Petrovich, Jr., Fort Worth, J. C. Hinsley, Austin, for appellee.

KEITH, Justice.

This case involves the construction of the Texas Open Records Act, *Tex.Rev.Civ.Stat. Ann. 6252–17a (Supp.1974–1975)* (hereinafter the "Act"), as applied to claims for workmen's compensation benefits filed by injured employees in Texas. Plaintiff sought to tie into the computer system of the Industrial Accident Board "and extract, by electronic means" certain items of information appearing on every claim for workmen's compensation filed by every injured employee in Texas covered by that law. The trial court granted plaintiff a summary judgment allowing plaintiff to inspect and copy such claim forms, denied the summary judgment sought by the defendants, and they have appealed.

Plaintiff alleged it was a nonprofit corporation engaged in gathering information relating to workmen's compensation claims for dissemination to its 282 members who

were employers of workmen. It sought, and procured, a declaration that claims filed with the Industrial Accident Board by injured workmen in Texas, under the provisions of *Tex.Rev.Civ.Stat.Ann. art. 8307, § 4a (1967),* are "public records and subject to inspection and copying by the public" as provided for in the Act. Defendants[1] were ordered, by the writ of mandamus, to permit copying of all such claims so as to disclose the file number of the claim, claimant's name, his social security number, his employer, the date of injury and the nature thereof, and the name of claimant's attorney, if any.[2]

Defendants appeal upon five points of error which require a more detailed statement in connection with several of the contentions brought forward.

At the outset it is well to state that while the Act is new and as yet without judicial interpretation, we bear in mind the purpose as set out in *Sec. 1* and the requirement that it "be liberally construed in favor of the granting of any request for information." *Sec. 14(d).* We likewise readily concede that the Industrial Accident Board is a governmental body as defined in *Sec. 2(1)(A)* and that under *Sec. 8*[3] a writ of mandamus may be issued to compel the Board to make public information as defined in the Act available under the Act.

But, in deciding this appeal we must bear in mind two other rules, those relating to the writ of mandamus and those governing the granting of summary judgments.

■ When *Sec. 8* speaks of the right to a writ of mandamus, it says that the person requesting the information "may seek a

writ of mandamus" and we are of the opinion that the writ should issue only under the general rules relating to the granting of the writ, some of which were set out by Justice Sharp in *Callahan v. Giles,* 137 Tex. 571, 155 S.W.2d 793, 795 (1941):

> "Mandamus is an extraordinary writ, and is not issued as a matter of right, but rests largely in the sound discretion of the Court. * * * The writ will not be granted unless the petition shows that the relator has a clear right to the writ. * * *
>
> * * * * * *
>
> "While mandamus is a common law writ and not an equitable remedy, its issuance is largely controlled by equitable principles."

One of the cases relied upon by Justice Sharp in *Callahan,* supra, was *Westerman v. Mims,* 111 Tex. 29, 227 S.W. 178, 181–182 (1921), quoting from a decision of the Supreme Court of the United States, and saying:

> " 'Mandamus * * * will not be granted in aid of those who do not come into court with clean hands,' since the writ issues 'to remedy a wrong, not to promote one.' "

The Court continued:

> "The rule that he who seeks a mandamus must present his application with clean hands has no different meaning from the general maxim in equity that 'he who comes into equity must come with clean hands.'
>
> * * * * * *

supply public information or information which the attorney general has determined to be a public record, the person requesting the information or the attorney general may seek a writ of mandamus compelling the governmental body to make the information available for public inspection."

In this case, the attorney general held that the information should have been made available but defendants declined to follow his opinion.

---

1. The defendants below were the Industrial Accident Board, an agency of the State of Texas, its chairman and members as well as its executive director. We will refer to them collectively as the defendants.

2. A proviso in the judgment excluded information relating to injuries to a claimant's genitalia.

3. *Sec. 8* of the Act reads: "If a governmental body refuses to request an attorney general's decision as provided in this Act, or to

"Having concluded that the petition of relators is grounded on conduct amounting to an invitation to, and hence participation in, an act violative of good faith and of conscience, it follows that relators did not come into court with clean hands, as required to entitle them to the relief prayed for, and hence the mandamus is denied."

Chief Justice Cureton, in *City of Wink v. Griffith Amusement Co.,* 129 Tex. 40, 100 S.W.2d 695, 702 (1936), applied this maxim in this manner:

"One whose business violates the public policy of the state . . . having no legal right to be protected, and not coming into court with 'clean hands,' because his activities violate the public policy of the state, cannot be given relief in a court of equity."

Defendants' answer tendered several defenses, the first of which was that the information sought by plaintiff was to be used by its member firms to discriminate against prospective employees in violation of *Tex.Rev.Civ.Stat.Ann. art. 8307c (Supp. 1974–1975).*

Defendants, pursuant to *Texas Rules of Civil Procedure, rule 168,* served interrogatories upon plaintiff seeking to learn, inter alia: (1) the purpose of wanting the file number of the claim, claimant's social security number, claimant's employer's name, and the name of claimant's attorney; (2) if such information had ever been used as a basis for discharging an employee of a member company of plaintiff; (3) if such information had ever been used as the basis for refusing to employ a prospective employee by a member company.

Thereupon, plaintiff filed its motion to suppress and to strike all of such interrogatories. The trial court, although requiring answers to a few of the interrogatories (which are not material to this appeal) sustained plaintiff's motion as to the interrog-

atories listed above and they were not answered by plaintiff.

By point five, defendants contend that the trial court erred in sustaining plaintiff's motion to suppress and to strike defendants' interrogatories which would have elicited answers showing the use which would be made of the information requested by plaintiff. We agree and sustain point five for the reasons now to be stated.

■ This being an appeal from an order granting a summary judgment, it is well to remember that an unusually long series of cases from our Supreme Court has declared that it is the burden of the moving party to demonstrate, as a matter of law, that there is no genuine issue of fact and that he is entitled to judgment.[4]

Defendants contend that if permitted to exercise their discovery rights they would have established, or at least raised a fact issue, that the purpose of the request for the information was to enable plaintiff to disseminate such information to its "member companies" where it would then be used to discriminate against prospective employees of such companies. The plaintiff had alleged that its principal business activity was the compiling of industrial accident claims which "are used solely by its member companies for the purpose of assisting in checking out a prospective employee's background prior to hiring."

In its brief, plaintiff amplifies its purpose by saying: "The relevance of a prospective employee's past injury to the job or task which he seeks to perform, even though he may be physically incapable of performing same, is the reason [plaintiff] seeks to inspect the records of [defendants]." It also asserts that small businesses cannot afford pre-employment medical examinations of their employees; and, in other instances, union contracts prohibit such examinations. From this base it argues that since the

---

4. This series of cases is set out in *Coward v. Gateway National Bank of Beaumont,* 515 S.W.2d 129, 134, fn. 4 (Tex.Civ.App.—Beaumont 1974, writ granted), and need not be repeated here.

employer's insurance carrier is liable to the injured workman for the consequences of any injury, even if aggravated by a preexisting disability, the information should be available to such member.

It then cites the recent decision of *Swanson v. American Manufacturing Company,* 511 S.W.2d 561 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n. r. e.), holding that an employer may lawfully discharge an employee who falsified his employment application by concealing prior compensable injuries notwithstanding *Art. 8307c.*

Blacklisting is defined in and prohibited by *Tex.Rev.Civ.Stat.Ann. arts. 5196c and 5196d (Supp.1974–1975),* respectively, while *Art. 8307c* prohibits discrimination against any employee who has in good faith filed a claim, hired a lawyer to represent him in a claim, or instituted a proceeding under the workmen's compensation law.

This series of statutes clearly states the public policy of this state; and, if one of the purposes of the plaintiff was to violate or to assist in the violation of such stated policy, it did not come into court with clean hands. Thus, if the facts alleged by the defendants as to the invidious purpose of plaintiff in the acquisition of the information were to be established upon the trial, plaintiff would not be entitled to the writ of mandamus. *City of Wink v. Griffith Amusement Co.,* supra (100 S.W.2d at 702); *Westerman v. Mims,* supra (227 S.W. at 182).

In this summary judgment proceeding, with the plaintiff having the burden of showing its right to the writ as a matter of law, the trial court abused its discretion and erred in depriving the defendants of the right to utilize the discovery rules to prepare their defense. We need not speculate as to the results which defendants would have obtained in their discovery; the fact remains that they were

entitled to attempt, at the very least, to procure admissible evidence and were denied this right. No litigant should be cast in summary judgment until he has had an opportunity to prepare his case for trial. Cf. *Texas Department of Corrections v. Herring,* 513 S.W.2d 6 (Tex.1974), involving special exceptions to pleadings. See also, *Womack v. Allstate Insurance Company,* 156 Tex. 467, 296 S.W.2d 233, 237 (1956); *"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934, 936 (Tex.1972).

But, plaintiff argues that *Sec. 5(b)* [5] of the Act precludes any inquiry on the part of the public agency into the purpose to which such information is to be used. We are unwilling to attribute such a broad meaning to the words used by the Legislature. When the Board, from the meager record which we review, had reason to believe that plaintiff intended to use the information to aid in blacklisting and discriminating, courts should not, with knee-jerk alacrity, lend assistance to such a project. Instead, we are of the opinion that such fact should be determined by the trial court so as to be in position to exercise the discretion conferred by law.

Defendants' point five is sustained and the judgment of the trial court is reversed and the cause is remanded. Because of the novelty of the case and its importance, we feel that it is our duty to discuss briefly the remaining contentions of the parties since they may be of importance in the trial of the case which we have ordered.

Much of defendants' brief is taken up with discussion of its third point wherein they contend that the claim forms sought by plaintiff are excepted from the operation· of the Act "as information deemed confidential by the constitutional right of privacy." A governmental body is not required to furnish information found in its records if it is "information deemed confi-

5. *Sec. 5(b)* of the Act reads: "Neither the custodian nor his agent who controls the use of public records shall make any inquiry of any person who applies for inspection or copying of public records beyond the purpose ·of establishing proper identification and the public records being requested; . . . ."

dential by law, either Constitutional, statutory, or by judicial decision." *Sec. 3(a)(1) Act.* We disagree for the reasons now to be stated and overrule such point.

Defendants' able counsel calls to our attention many of the leading cases from the United States Supreme Court holding that the right of privacy is one of constitutional dimension.[6] We recognize, as indeed we must, the supremacy of the several cases cited but only when confined to the particular field of conduct involved. We do not find them controlling in the case at bar.

We have not been referred to any statute or judicial decision which has declared that claims for workmen's compensation benefits are within the protection of the doctrine of privacy; nor has counsel cited to us a decision in Texas raising the doctrine of privacy to constitutional dimensions.

Only recently has Texas joined the majority of the other jurisdictions in recognizing the right "to be let alone" by adopting in tort actions the rule that an "unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted." See *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973), where Justice Denton discussed many of the leading authorities. Because of our disposition of this point of error upon other grounds, we do not find it necessary to determine if the

right of privacy has now attained constitutional status in Texas.

Instead, we turn to the statute itself in an effort to determine if the records sought by plaintiff are within the ambit of the Act.

In passing upon the Act, we are required to look to the purpose of the Legislature in adopting the Act and it is clearly stated in *Sec. 1* in the most positive terms.[7] This is followed by the broad language of *Sec. 3(a),* quoted in the margin.[8] After providing that "*[a]ll* information collected, assembled, or maintained by governmental bodies" is public information and available for inspection, the Legislature carefully defined sixteen exceptions *only* when such information could be withheld from inspection. *Subsection 14* provides that student records at educational institutions could not be inspected and copied; *subsection 15* made birth and death records in the Bureau of Vital Statistics immune from inspection. It is significant that no mention is made of claims filed with the Industrial Accident Board.

 It is well established in this state that the paramount or cardinal rule of construction of statutes is to ascertain and give effect to the intention of the Legislature. Many cases could be cited in support of this elementary rule; but in the interest of space we mention only a few. See, e. g., *Dolan v. Walker,* 121 Tex. 361, 49 S.W.2d

---

**6.** See, e. g., *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); et al.

**7.** "Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of Texas that all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The

people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. To that end, the provisions of this Act shall be liberally construed with the view of carrying out the above declaration of public policy."

**8.** *Sec. 3(a)* of the Act reads in part: "All information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body, with the following exceptions only: . . . ."

695, 697 (1932); *State v. Shoppers World, Inc.,* 380 S.W.2d 107, 110 (Tex.1964); *Flowers v. Dempsey-Tegeler & Co.,* 472 S.W.2d 112, 115 (Tex.1971). When that intention has been ascertained, it is the duty of the courts to enforce such intent. *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711, 714 (1961). We are not to look to the consequences of our action here in limiting the application of the Act to the exact words of the Act. *Johnson v. Darr,* 114 Tex. 516, 272 S.W. 1098, 1099 (1925).[9]

■ By specifically naming the sixteen exceptions from disclosure, the Legislature in effect expressed its intention to make all other records discoverable. The maxim *expressio unius est exclusio alterius* (the naming of one thing excludes another) is applicable here. The rule was stated by Justice Sharp in *State v. Mauritz-Wells Co.,* 141 Tex. 634, 175 S.W.2d 238, 241 (1943):

> "It is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others."

■ We conclude that claims for workmen's compensation filed with the Industrial Accident Board constitute "information collected, assembled, or maintained" by a governmental body and that such claims are available for inspection under *Section 3(a)* of the Act.

As an ancillary contention, defendants urge that Industrial Accident Board Rule 9.040, quoted in the margin,[10] authorizes the denial of the information plaintiff now seeks in its suit. It is readily apparent that such rule, if valid and operative, would prevent any person, firm or corporation from receiving such information unless there was an open claim for workmen's compensation for a particularly named claimant then pending before the Board or a court of competent jurisdiction. In such event, only the claimant, his attorney, the carrier, the employer at the time of the current injury, and third party litigants could obtain such information.' It is obvious that plaintiff could not secure such information, except possibly as to one of its own employees—certainly not as to all claimants on a wholesale and indiscriminate basis.

Defendants, citing cases arising under rules adopted by the Railroad Commission and the Liquor Control Board, argue that this rule has the same "force and effect of a statute." We do not agree. The Railroad Commission exercises legislative power specifically delegated to it by the Constitution and the statutes. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co.,* 121 Tex. 594, 51 S.W.2d 284, 287 (1932). The Texas Liquor Control Board (now known as Texas Alcoholic Beverage Commission) exercises police power under a statute delegating broad rule-making authority. *Texas Liquor Control Board v. Attic Club, Inc.,* 457 S.W.2d 41, 42 (Tex.1970).

Contrasted with the rule-making power of the two agencies just mentioned, the only general authority for the promulgation of rules by the Industrial Accident Board is this language found in *Tex.Rev.Civ.Stat. Ann. art. 8307, § 4 (1967),* "The Board may make rules not inconsistent with this law

9. This decision is the only one in our jurisprudence decided by an all-woman Supreme Court of Texas, a panel appointed by Governor Neff which sat during the early months of Governor Miriam A. Ferguson's first term of office.

10. "As a prerequisite for approval of a request for a record check or for the furnishing of information on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request or request for infor-

mation is presented to this Board. The first, middle and last name of the claimant, age and social security number, and if possible, dates of injury and the name of prior employers must be given in request for information. The Board will furnish the requested information or a record check only to the following: (1) the claimant; (2) the attorney for the claimant; (3) the carrier; (4) the employer at the time of the current injury; (5) third party litigants. Fees and charges for record requests may be obtained from the Industrial Accident Board." (1961) (Rev.1974)

for carrying out and enforcing its provisions . . .." [11]

Rules promulgated by the Industrial Accident Board have fared poorly in the courts. Thus, a rule was found to exceed the delegated authority of the Board and was held invalid in *Kelly v. Industrial Accident Board*, 358 S.W.2d 874, 878 (Tex.Civ. App.—Austin 1962, writ ref'd). See also, *Jackson v. Texas Employers' Insurance Association*, 471 S.W.2d 450, 451 (Tex.Civ.App. —Eastland 1971, writ ref'd n. r. e.). In *Bailey v. Texas Indemnity Ins. Co.*, 14 S.W.2d 798, 802 (Tex. Comm'n App., 1929), striking down still another rule, the Court said: "The regulations of the Industrial Accident Board cannot be used in construing the law, so as to give it a higher mandate than that of the statute."

Defendants also cite *Galacia v. Texas Employers' Insurance Association*, 348 S.W.2d 417, 420 (Tex.Civ.App.—Waco 1961, writ ref'd n. r. e.), and *Clawson v. Texas Employers' Insurance Ass'n*, 469 S.W.2d 192, 195 (Tex.Civ.App.—Houston [14th Dist.] 1971), affirmed, 475 S.W.2d 735 (Tex. 1972), each of which contains language to the effect that Industrial Accident Board Rules "ha[ve] the force and effect of law." These authorities were severely wounded by Chief Justice Calvert's repudiation of the basic holding in each case. *Clawson* (475 S.W.2d at 738).

Another instance of rule-making failure on the part of the Board is to be found in *Burton v. I. C. T. Insurance Company*, 304 S.W.2d 292, 296 (Tex.Civ.App.—Texarkana 1957, no writ), where the court held that the Legislature "did not intend to delegate legislative power to the Board, an administrative body, whereby such Board in the enactment of administrative rules could change any of the substantive laws of this state."

■ In determining the validity of rules promulgated by administrative agencies, the rule is stated in *Texas State Bd. of Examiners in Optometry v. Carp*, 388 S.W.2d 409, 414–415 (Tex.1965):

> "[R]eview by the judiciary is constitutionally limited to a determination of questions of law, i. e., whether the action is within the powers delegated to the agency and, if so, whether the action is arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence."

■ The rule under discussion does not appear to have any readily discernable base in the compensation statute. Instead, as we read the argument of defendants, it does not attempt to justify its promulgation by pointing to statutory authority. The statement of the point itself demonstrates the lack of statutory support.[12]

The Act is one of general application to all governmental agencies in the State; and, we are of the opinion that the rule relied upon does not withdraw the claims from the reach of the Act since to do so would render it in conflict with the Act.

Defendants contend, alternatively, that the order of the trial court should be confined to claims filed subsequent to the effective date of the Act, June 14, 1973; but, we find no indication in the Act that the right of inspection is to operate only prospectively. Defendants' attack is confined to the citation of the parallel provisions in the Constitution of Texas, Art. I, Sec. 16, and Constitution of the United States, Art. 1, Sec. 10. Although it is not made clear in the argument, it appears that reliance is

---

11. Limited authority to promulgate rules governing pre-hearing conferences is granted to the Board by *Art. 8307, § 10(b)*, but defendants do not rely upon this statute in the presentation of the point under consideration.

12. Point Two reads: "The district court erred in rendering judgment for [plaintiff] rather than for [defendants] because the files and records involved are excepted from the operation of Article 6252–17a by Section 3(a)(1) of that statute as information deemed confidential by Texas Industrial Accident Board Rule 9.040, which has the force and effect of a statute."

placed upon the provisions relating to ex post facto or retroactive laws.

■ More than a century ago, our Supreme Court determined that the use of the words "ex post facto" is nominally confined to the criminal law, rendering an act punishable in a manner it was not when committed. *Bender v. Crawford*, 33 Tex. 745, 751 (1870). Having examined the cases cited and being satisfied that the text announces the correct rule, we now quote from *12 Tex.Jur.2d, Constitutional Law, § 121, at 470 (1960):*

> "The distinction between the power of the legislature to enact legislation and the prohibition of the legislature to enact retroactive legislation should be kept in mind. The legislature has the same power to act retrospectively as it does to act prospectively. The prohibition found in the proscription against retroactive legislation is not a proscription against the legislative power to act. *It is a proscription against a power of the legislature to destroy vested rights.* Thus so long as no vested right is destroyed the right of the legislature to enact legislation effective retrospectively is not limited." (emphasis supplied)

■ We find no indication in the Act that only records which came into existence after the effective date of the Act were to be discoverable. From the language used by the Legislature, it appears that all information within the governmental agencies at the time the request is made is subject to being inspected under the provisions of the Act. In any event, we do not find that any vested right has been destroyed by the adoption of the Act.

We conclude this overly long opinion by reference to the right of the plaintiff to intrude its information-gathering activities into defendants' computer system. We are unable to determine from our abbreviated record whether plaintiff seeks a copy of every claim filed since 1913 or if it wants access to defendants' computer program upon a selective basis as to particular individuals who may have filed claims. It is apparent, however, that plaintiff seeks to use the computer system in the acquisition of the information it sought in its suit.[13]

Defendants' summary judgment proof contained the affidavit of its Data Processing Manager which asserted that compliance with the plaintiff's request to enter defendants' computer program "would cause a complete breakdown of our already overloaded agency workload; it would also require the complete restructuring of our data processing system and the hiring of personnel to supply the information requested by the Industrial Foundation of the South."

■ While this is properly a matter for determination of the State Board of Control, under Sec. 9 of the Act, the possibility of abuse of computer privileges is one addressed to the sound discretion of the trial court. In the law review article entitled "Privacy and the Computer," V. Countryman, *49 Tex.L.Rev. 837, 863 (1971),* the author points to some dire consequences which may flow from the invasion of privacy by entry into a computer system. We are of the opinion that such consequences may be

13. In a letter to defendants, plaintiff's counsel stated: "In some of my past correspondence with your agency, I have made mention of the fact that we were aware that the Industrial Accident Board has been using a computer system for the storing of information pertaining to its files. During the last year, my client has taken occasion to investigate the technical feasibility of tying into a computer system such as the one being used by the Industrial Accident Board *and extract, by electronic means,* the information requested. Our past investigations reveal that this approach is technically sound and can be accomplished with a minimum of disruption to the internal workings and everyday operations of the Industrial Accident Board. It is my further understanding that by the installation of a terminal or terminals which would accommodate additional telephone lines, outside inquiry can be made upon the existing computer system which would be programmed to extract only information requested and which would not put any information into the computer system." (emphasis supplied)

appropriate for consideration by the trial court in the exercise of discretion in the award or denial of the writ of mandamus upon the trial which we have ordered.

Under the abbreviated record now before us, we are unable to, and do not determine whether the Legislature intended to make claims of injured workmen filed with the Industrial Accident Board available for commercial exploitation by a private corporation. See, e. g., *Wine Hobby USA, Inc., v. United States Internal Revenue Service,* 502 F.2d 133, 137 (3d Cir. 1974).

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

DIES, Chief Justice (dissenting).

I would go further than the majority opinion and hold that the information desired by the Industrial Foundation of the Southwest cannot be obtained. The Texas Open Records Act [Tex.Rev.Civ.Stat.Ann. art. 6252–17a § 1 (1974–1975) ] on which the trial court based his judgment herein declares that "all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." The information on a notice of injury or claim for workmen's compensation can by no stretch of the imagination be an "official act . . . [of] public officials and employees." They are private disclosures which may at times be extremely sensitive, embarrassing, even detrimental to the individual concerned. The trial court recognized this by exempting in his order "injury to the genitalia of the body."

The Act [§ 2(2) (1974–5) of the Tex. Rev.Civ.Stat.Ann.] defines public records as "the portion of all documents, writings, letters, memoranda, or other written, printed, typed, copied, or developed materials which contains public information." I do not re-gard the information appellee wishes to computerize as public information.

Art. 8307 § 4 of Tex.Rev.Civ.Stat.Ann. (1967) allows the Industrial Accident Board to "make rules not inconsistent with this law for carrying out and enforcing its provisions." The Board has adopted Rule 9.040 as follows:

"As a prerequisite for approval of a request for a record check . . . on a claimant, there must be a workmen's compensation claim for the named claimant open or pending before this Board or on appeal to a court of competent jurisdiction from the Board at the time the record search request . . . is presented to this Board. The first, middle and last name of the claimant, age and social security number, and if possible, dates of injury and the name of prior employers must be given in request for . . . a record check." (1961, Rev.1974)

This is a reasonable rule and offers protection to parties interested in claims before the Board.

No law is good law unless it makes good sense. It does not make good sense to me to computerize the information appellee wishes on hundreds of thousands of individuals in the files of the Industrial Accident Board.

If one of the purposes of securing this information is to screen job applicants, it violates the spirit of Texas law. See Tex. Rev.Civ.Stat.Ann. art. 8307c § 1 (1974–5); art. 5196 (1971); art. 5196c (1974–5).